OPINION OF THE COURT
Max Sayah, J.
THE ISSUE
The issue before this court concerns an interpretation of portions of the Administrative Code of the City of New York. In particular, may a site safety coordinator of a worksite be criminally charged with an offense involving the use of a crane, even though he has no physical or supervisory control over the operation of the crane? In short — are the relevant portions of the Administrative Code statutes malum prohibitum — statutes of strict liability?
STATEMENT
The defendant Jerry Mik, having been charged with viola *905 tions of the Administrative Code, was tried in a Bench trial before this court. The two counts[1] charge Mr. Mik with:
Count No. 3A: Failing to provide reasonable and adequate protection for the safety of all persons and property affected by crane operators (Administrative Code § C26-70.0);
Count No. 3B: Permitting the operation of a power-operated crane without a certificate of approval, certificate of operation and a certificate of on-site inspection (Administrative Code §§ C26-70.0, C26-1909.4);
Count No. 4: Permitting materials to be hoisted over a sidewalk without the presence of a sidewalk shed when the sidewalk was not closed to the public (Administrative Code § C26-1901.5 [a] [2]).
The court finds the defendant guilty beyond a reasonable doubt on counts Nos. 3A and 3B and not guilty of count No. 4. Inasmuch as the court has adjudged the defendant guilty based on interpretation of the law, we set forth in this memorandum the findings of fact and the conclusions of law.
THE FACTS
During the trial the following facts were introduced in evidence either by testimony or by stipulation.
On May 30, 1985, Brigitte Gurney was walking along Third Avenue in front of the construction site known as 1064-1080 Third Avenue, located between East 63rd and East 64th Streets in Manhattan. The owner and building construction company of the site is Tishman Realty and Construction Company. At approximately 1:00 p.m. a crane, known in the industry as a "cherry picker” toppled at the construction site, pinning Ms. Gurney to the ground, causing her serious injuries.
It was stipulated that Jerry Mik, the defendant, an employee of Tishman Realty and Construction Company, was designated by his employer as the site safety coordinator charged with the duties and responsibilities set forth as a part of the Building Code of the City of New York (Administrative Code, ch 26, tit C, part II). It was further agreed by the parties that on May 29 and May 30, 1985, although a permit for the use of a crane at the site had been requested of the Building Department, the permit had not been issued as of those dates.
*906 Max Gayer, a superintendent employed by A & S Concrete Corporation, a subcontractor for Tishman, testified that on May 29 and 30 he was the supervisor in charge of the crane operation at the site. Gayer further testified that both he and the defendant were aware that on the two dates, May 29 and 30, 1985, no permit had been issued permitting the crane to operate, yet Mr. Gayer permitted the crane to operate without the permit "because we had to proceed with the job at that time.”
According to Gayer, he authorized the crane to be operated on May 29, 1985 and a number of times on May 30, 1985 between 9:00 a.m. and 10:00 a.m. Although Gayer conceded that Mr. Mik had no authority to direct the crane operator to perform his duties, Gayer denied that he had any conversations with the defendant during which Mr. Mik ordered that all crane operations cease until the proper permit was received.
The defendant Jerry Mik testified that when, on May 29, 1985, he observed the crane in operation for approximately 20 minutes, he "found Max Gayer, told him that I had not received the permits yet; that he would have to stop.” Mik further testified that when on May 30, 1985 he again noticed the crane in use between 9:00 a.m. and 10:00 a.m., and the permit still had not arrived, he told Gayer to cease and desist the crane activity. Mik contended that there was no physical way of stopping the crane operation because "most construction men are very, very stubborn.”
Mik stated that the jobsite closed down for the luncheon break at approximately 10 minutes to 12:00 p.m. and that he did not see the ill-fated accident, involving the crane and Ms. Gurney, which occurred at approximately 1:00 p.m.
Philip Zezulinski, the Tishman project manager for the site, testified that it was the subcontractor’s responsibility to obtain a permit for the use of the crane; that neither he, Tishman, nor Mik had any physical power to stop the crane operation. According to Zezulinski, in order to prevent operation of the crane, the only option the site safety coordinator had was to call the police.
DISCUSSION
The defendant is charged with violating Administrative Code §§ C26-70.0 and C26-1909.4.
Administrative Code § C26-70.0 provides: "General safety *907 requirements. — Persons engaged in building operations shall provide reasonable and adequate protection for the safety of all persons and property affected thereby; and all such operations shall be conducted in accordance with and subject to the safety requirements of this article and the building code, and the safety requirements of article 10 of the labor law.”
Administrative Code § C26-1909.4 provides: "No owner or other person shall authorize or permit the operation of any power operated crane or derrick without a certificate of approval, a certificate of operation and a certificate of on-site inspection.”
The Site Safety Regulations implemented by the Commissioner of Buildings on March 6, 1984 are part of the Building Code and are incorporated into the Administrative Code pursuant to the language of section C26-70.0. Rule 4 provides, in relevant part:
"Duties of Site Safety Coordinator * * *
"The site safety coordinator shall monitor compliance with the safety requirements of Article 19 of Title C of the Building Code, but shall not be responsible for reviewing design specifications, lifting capacities, performing technical inspections, etc. (except as such duties may fall within the scope of other responsibilities of such person). In addition, the site safety coordinator shall have the following duties * * *
"e. Ascertaining that certificates of approval, operation and on-site inspection have been obtained as required by Section C26-1909.4 (b) (c) and (d) of the Code”.
The defendant contends[2] that he conducted himself in a careful and reasonable manner and that he cannot be held criminally liable for the acts of an independent criminal intruder, nor can be held strictly liable for acts in violation of the Administrative Code because there has not been a clear legislative intent to impose strict liability. He argues that inasmuch as the crane was not under the direct supervision of himself or Tishman, all that he could do was instruct someone (Mr. Gayer) not to use the crane until the permits were actually received. Mik further urges that at no time did he "permit” the crane to be used in the hoisting operations.
Penal Law § 15.15 (2) provides that unless the "statute defining a crime * * * clearly indicate[s] a legislative intent to impose strict liability” then the statute "should be construed as defining a crime of mental culpability.”
*908 Penal Law § 15.10 provides in part: "The minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which he is physically capable of performing. If such conduct is all that is required for commission of a particular offense, or if an offense or some material element thereof does not require a culpable mental state on the part of the actor, such offense is one of 'strict liability.’ ”
If the Administrative Code provisions with which the defendant is charged are to be read under the standard of strict liability, then the arguments made by Mr. Mik — that he did not have the culpable mental state required — have no bearing on the determination of the guilt or innocence of the defendant. Under the standard of strict liability, all that the People would have been required to prove is that Mr. Mik violated his duties under rule 4 as site safety coordinator on May 29-30, 1985 either by voluntary acts or by the omission of acts which he was capable of performing. (Penal Law § 15.10.)
It is clear that the validity of statutes imposing criminal liability absent a culpable mental state has long been recognized. (Morissette v United States, 342 US 246 [1952]; United States v Dotterweich, 320 US 277 [1943]; United States v Balint, 258 US 250 [1922]; People ex rel. Price v Sheffield Farms-Slawson-Decker Co., 225 NY 25 [1918].) Indeed, when the very purposes of legislation touch the phases of the lives and health of people which, in the circumstances of modern industrialism, are largely beyond self-protection, we must regard statutes as a "working instrument of government” to protect the public rather than a mere collection of English words. (United States v Dotterweich, supra, at p 280.)
The prosecution to which the defendant Mik has been subjected is based on familiar types of legislation whereby penalties serve as the effective means of enforcement.
A penal statute should be strictly construed, especially where the act is malum prohibitum. (People v Scott, 26 NY2d 286 [1970]; People v Minuto, 71 Misc 2d 800 [1972].) However, construction must follow the clear meaning of the words and the clear intent of the Legislature. (People v Ditta, 52 NY2d 657 [1981].) The defendant urges that the statute must "clearly indicate a legislative intent to impose strict liability.” Jerry Mik appears to suggest that the Legislature must use the words, "This is a statute of strict liability.” Few strict liability statutes are so explicit; yet by their words and context they are deemed statutes malum prohibitum.
*909 In this case, the court finds that the words of Administrative Code chapter 26 concerning the erection and maintenance of buildings are permeated with evidence of a legislative intent to impose strict liability.
For example:
"The department [of Buildings] shall enforce * * * (1) the designation of buildings and structures as unsafe and the necessary legal action * * * (3) the testing and approval of power-operated cranes” (NY City Charter § 643).
"[A]ny person shall be subject to * * * punishment * * * without prior notification that a violation exists [when] * * *
"4. [the] violation * * * consists of doing work without a permit” (Administrative Code § C26-85.5 [a] [4]; emphasis supplied).
'[A]ny and all persons who shall violate any of the provisions of this title * * * shall * * * be punished.” (Administrative Code § C26-86.5 [a].)
Finally, we note that the findings and statement of the Buildings Commissioner at the conclusion of the Rules Relating to the Designation of Site Safety Coordinators, effective July 22, 1983 and revised March 6, 1984, as set forth below, clearly evidence the intent that imminent peril exists thereby necessitating an immediate enactment. This is a persuasive inference that the rule concerning site safety coordinators, adopted in accordance with the Administrative Code, imposes a standard of strict liability:
"FINDINGS AND STATEMENT:
"As Commissioner of Buildings, I find that imminent peril to the public health and safety required that these modifications to the site safety rules be in effect, and that good cause exists for waiving the requirement that 30 days shall first elapse after publication in the City Record. The foregoing rule is therefore adopted to become effective after filing with the City Clerk, on the date of publication in the City Record.
"Robert Esnard, R.A.
"Commissioner”.
CONCLUSION
This court, under the standards of strict liability, finds the defendant Jerry Mik guilty of counts Nos. 3A and 3B. The evidence at trial demonstrated that the defendant as site safety coordinator knew that a Building Department permit *910 had not been received on the dates in question authorizing the operation of the crane. Having ascertained that a permit was not in place in accordance with his duties under rule 4, the defendant permitted the operation of the crane in violation of Administrative Code § C26-1909.4, thereby constituting the violation enumerated under count No. 3A. This omission to perform an act which he was physically capable of performing constituted the minimal requirement for criminal liability (Penal Law § 15.10).
A fortiori, it follows that the defendant’s permissive and omissive conduct by failing to prevent the operation of the crane, on May 29 and 30, was sufficient evidence for the court to find that the defendant did not "provide reasonable and adequate protection for the safety of all persons”. (Administrative Code § C26-70.0; count No. 3B.)
We reject the defendant’s argument that, after having accepted the duties and responsibilities of a site safety coordinator at a major construction site in the City of New York, he could avoid culpability by pointing a finger at a subcontractor or an "unforeseeable criminal interloper”.
This memorandum constitutes the verdict of the court.

. Jerry Mik was originally charged with seven counts in violation of the Administrative Code of the City of New York. All but two counts were dismissed on consent during pretrial and trial conferences.

. Posttrial briefs were submitted by the parties.