OPINION OF THE COURT
Martin H. Hettinger, J.
On October 27, 1987, the court rendered an oral decision upon the defendant’s motions. The following constitutes an elaboration of the basis for the rulings by the court.
An indictment has been filed against the defendant and two others alleging fraudulent behavior by them in regard to nominating petitions they signed as subscribing witnesses. In regard to this defendant the indictment charges he committed 42 counts of criminal possession of a forged instrument in the second degree (Penal Law § 170.25); three counts of perjury in the second degree (Penal Law § 210.10); three counts of making a punishable false written statement (Penal Law § 210.45); and three counts of misconduct in relation to petitions (Election Law § 17-122 [7]).
The defendant has made a pretrial motion requesting several forms of relief. I shall address each of these items in turn.
I. THE CLAYTON MOTION
The defendant has moved pursuant to CPL 210.20 (1) (i) and 210.40 for a dismissal of the entire indictment in the *641 interests of justice. Using the CPL 210.40 statutory criteria as a guide, I have carefully examined the grounds provided by the defendant in support of the motion. I have determined that the defendant has failed to establish a compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of him upon the indictment (aside from those counts I have determined must be dismissed for legal insufficiency) would constitute or result in injustice.
The motion to dismiss the indictment in the interests of justice is accordingly denied.
II. THE MOTION TO DISMISS ALL BUT 3 OF THE 42 COUNTS OF CRIMINAL POSSESSION OF A FORGED INSTRUMENT IN THE SECOND DEGREE AS MULTIPLICITOUS
The indictment charges the defendant with 42 counts of criminal possession of a forged instrument in the second degree. The gravamen of these counts is the alleged possession by the defendant of three Democractic Party nominating petitions in support of the candidacy of Pat Wagner for a seat upon the New York City Council. Each of these three standard-form designating petitions has lines to accommodate as many as 15 separate voter signatures endorsing the designation of the candidate for the purpose of having her name placed upon the voter ballot in a primary election. The relevant portions of the petition for purposes of decision of the present motion are reproduced here as follows:
DEMOCRACTIC PARTY DESIGNATING PETITION
"To the Board of Elections in the City of New York:
"I, the undersigned, do hereby state that I am a duly enrolled voter of the Democratic Party and entitled to vote at the next primary election of such party, to be held on September 10, 1985; that my place of residence is truly stated opposite my signature hereto, and I do hereby designate the following named person (or persons) as a candidate (or candidates) for the nomination of such party for public office(s) or for election to party position(s) of such party * * *
"In witness whereof, I have hereunto set my hand, the day and year placed opposite my signature.”
Directly beneath this endorsement language are the aforementioned 15 voter signature lines. The voter’s signature is accompanied on the same line by the required additional information as to the date of the signing, the voter’s residence, his assembly and election districts.
*642 Beneath the 15 lines containing the nominating voter signatures is the following attestation purportedly made by the defendant:
STATEMENT OF WITNESS
"I Sidney A. miller state: I am a duly qualified voter of the State of New York and am an enrolled voter of the Democratic Party. I now reside at 164 west 79TH street which is in the 72 Election District of the 67 Assembly District in the City of New York, in the County of New York.
"Each of the individuals whose names are subscribed to this petition sheet containing_signatures, subscribed the same in my presence on the dates above indicated and identified himself to be the individual who signed this sheet. I understand that this statement will be accepted for all purposes as the equivalent of an affidavit and, if it contains a material false statement, shall subject me to the same penalties as if I had been duly sworn.”
"Dated: June 29, 1987
"(Defendant’s Signature)
"Signature of Witness”
The blank space in the above paragraph was filled in with the numbers 12, 15 and 15, respectively, corresponding to the number of voter signatures appearing on each of the three nominating petitions.
The defendant has brought a motion seeking the reformation of the indictment to reduce the number of counts alleging a violation of criminal possession of a forged instrument in the second degree from 42 to 3. The defense contends that the appropriate unit of prosecution is each nominating petition, which has the defendant’s attesting declaration and signature affixed at the bottom thereof, rather than each of the purportedly forged voter signatures appearing on the petitions.
The defense proffers the following analysis of the forgery statutes in support of the motion. Penal Law § 170.25 in relevant part states that: "A person is guilty of criminal possession of a forged instrument in the second degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses any forged instrument of a kind specified in section 170.10.”
*643 Referring back to Penal Law § 170.10 we find a list of various types of written instruments that can be the subject of a forgery in the second degree prosecution. The defense urges that among these written instruments the type that is relevant to the facts of this case is found in subdivision (2), which provides as follows: "A public record, or an instrument filed or required or authorized by law to be filed in or with a public office or public servant.”
The defense points to Election Law § 6-144 which provides that designating petitions are required to be filed in the office of the Board of Elections of the City of New York. A logical conclusion reached by the defense by synthesizing these statutes is that the appropriate unit of prosecution in this case is each nominating petition, rather than each allegedly forged voter signature appearing thereon.
The defense further argues that the indictment as presently constituted in regard to these 42 counts violates the prohibition against multiplicitous pleading. An indictment is guilty of "multiplicity” when it charges in several counts an offense that under the circumstances has only been committed once and should properly be pleaded in a single count.
The People counter that the indictment is not void for multiplicity and that to accept the defendant’s pleading theory would result in the commission of the equally egregious pleading offense of "duplicity”, which occurs when two or more separate and distinct offenses are joined in a single count.
The following illuminating discussion of these terms appears in 1 Wright, Federal Practice and Procedure: Criminal 2d § 142, at 470 (1982): "[I]t is apparent that the presence of duplicity or multiplicity is dependent on whether a single offense or distinct and separate offenses are involved. Two examples will illustrate. If two or more women are transported in interstate commerce for immoral purposes in the same trip and the same vehicle, only one offense has been committed under the Mann Act, since it is the use of the facility of interstate commerce that is the essence of that statute. But if two or more aliens are smuggled into the United States in a single trip, a separate offense has been committed with regard to each alien, since the statute imposes a separate mandatory punishment as to each alien involved. In the Mann Act case, then, since there is a single offense, the charge can and should be made in a single count, since *644 separate counts for each woman involved would be multiplicitous. In the case of the aliens, on the other hand, since separate offenses are involved, a separate count should be used for each alien, and a single count referring to more than one alien would be duplicitous.”
Before further examining the antagonistic claims of multiplicity and duplicity being made, the People’s position concerning the propriety of the pleading of the 42 counts in issue must be explored. The People begin by focusing on the term "falsely make” which is found in the introductory paragraph of Penal Law § 170.10 (forgery in the second degree), which is incorporated by reference in Penal Law § 170.25 (criminal possession of a forged instrument in the second degree). This paragraph provides as follows: "A person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument”.
The term "falsely makes” is defined in Penal Law § 170.00 (4) as follows: "A person 'falsely makes’ a written instrument when he makes or draws a complete written instrument in its entirety, or an incomplete written instrument, which purports to be an authentic creation of its ostensible maker or drawer, but which is not such either because the ostensible maker or drawer is fictitious or because, if real, he did not authorize the making or drawing thereof.”
The prosecutor urges that under this definition of forgery the focus is on the "ostensible maker or drawer” of the written instrument. He further reasons that if one written instrument has more than one ostensible maker or drawer, i.e., more than one unauthorized voter signator of a nominating petition, each such unauthorized signature constitutes a separate count of forgery. Consequently, by applying this analysis of the crime of forgery to the related crime of possession of a forged instrument, the prosecutor reaches the conclusion that each of the unauthorized voter’s signatures appearing on the petition must be charged as a separate count of the indictment.
Moreover, the prosecutor urges that the indictment must be pleaded in this manner, rather than compacted into three counts relating to the number of designating petitions, because the latter form of pleading would run afoul of the aforementioned prohibition of duplicitous pleading. This rule of pleading was statutorily engraved in CPL 200.30, which *645 expressly prohibits the charging of more than one offense in each count of an indictment. As elucidated in People v Keindl (68 NY2d 410, 418): "The prohibition against duplicity furthers not only the functions of notice to a defendant and of assurance against double jeopardy, but also ensures the reliability of the unanimous verdict. If two or more offenses are alleged in one count, individual jurors might vote to convict a defendant of that count on the basis of different offenses; the defendant would thus stand convicted under that count even though the jury may never have reached a unanimous verdict as to any one of the offenses.”
Applying these principles to the petitions in question, the prosecutor contends that simply charging each petition as a count would entail the risk that the jury could render a guilty verdict as to each petition without necessarily unanimously agreeing that any particular one or more of the voter signatures appearing thereon were in fact forged. For example, six jurors could find that only the first voter signature on a petition was forged and no others, while the remaining jurors could find only the second voter signature was forged and none of the others. Yet, they could all vote guilty as to the charge of criminal possession of a forged instrument in regard to this petition because they were all satisfied that a forged voter signature appeared on the petition.
Although there is some merit to this duplicity argument made by the prosecutor, the court is of the opinion that the risk of a nonunanimous verdict could be obviated by a proper instruction to the jury that they would have to unanimously agree upon at least one and the same particular voter signature appearing on the petition having been forged before they could render a verdict of guilty as to the count dealing with that petition.
The prosecutor has further posited a separate statute based theory that mandates the pleading of each voter signature as a distinct count. Pursuant to Penal Law § 170.00 (2), a "[complete written instrument” is defined as: "one which purports to be a genuine written instrument fully drawn with respect to every essential feature thereof. An endorsement, attestation, acknowledgement or other similar signature or statement is deemed both a complete written statement in itself and a part of the main instrument * * * to which it attaches.”
Applying this statute to the petitions in issue, the prosecutor contends that each allegedly forged voter signature *646 constitutes a separate endorsement of the candidate seeking nomination. Thus, each of the voter signatures would constitute a "complete written instrument” of the type defined in Penal Law § 170.10 (2). Consequently, each signature would constitute and have to be pleaded as a separate count of criminal possession of a forged instrument in the second degree.
The dearth of judicial precedent in the context of forged nominating petitions as the subject of criminal prosecutions makes the resolution of the present motion a formidable task. The court is not unsympathetic to the plight of the defendant who faces the prospect of having a jury affected by the impact of considering 42 separate counts of criminal possession of a forged instrument, when the possibility exists that he should only be tried for three counts thereof. However, after reviewing the arguments made by the parties, I am persuaded that the indictment in regard to these 42 counts was properly pleaded based upon the above analysis of the forgery statutes.
Any residual doubts the court may have on the issue must be resolved in favor of the People under two distinct bases provided by the holdings of our Court of Appeals. Under People v Reed (276 NY 5) a nisi prius court is enjoined to resolve any reasonable doubt it may have in ruling upon a question of law in a criminal case in favor of the People in order to ensure that the issue can properly be preserved for a determinative review by the appellate courts. Further, under People v Eboli (34 NY2d 281, 287), the prosecutor’s office is vouchsafed a great deal of discretion in its choice of determining which crime a defendant should be prosecuted for having violated when the alleged criminal conduct is covered by several overlapping penal statutes of diverse levels of severity and authorized punishment. By means of analogy, as long as the rule against multiplicity is not violated, the decision as to the number of counts of forgery or possession of a forged instrument that can be wrung from one designating petition should similarly be left to the discretion of the prosecutor.
Based upon all of the foregoing reasons the defendant’s motion to reduce the number of counts of criminal possession of a forged instrument from 42 to 3 is denied.
III. SEVERANCE
The motion for a severance has previously been granted upon consent of the People.
*647 IV. DISCOVERY
In regard to the evidentiary items of discovery requested by the defendant in paragraph 29 of the omnibus motion, I find that the People’s response satisfactorily complies with the requirements of CPL article 240. This discovery motion is otherwise denied.
V. DISCOVERY RELATED TO THE SELECTIVE AND DISCRIMINATORY PROSECUTION CLAIM
In furtherance of his intention to develop a motion to dismiss the indictment on the grounds of selective and discriminatory prosecution, the defendant has moved for discovery of an array of items related to the internal decision-making processes of the prosecutor’s office that culminated in the present indictment. He further seeks discovery of data concerning the number of criminal prosecutions undertaken of persons who are chargeable with crimes similar to those for which he has been indicted arising from forged voter signatures on nominating petitions during the years 1985-1986.
As was held in United States v Berrios (501 F2d 1207, 1211): "To support a defense of selective or disciminatory [sic] prosecution, a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government’s discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.”
The court further stated in regard to the question of whether the defense was entitled to subpoena documentary evidence from the prosecution’s files it alleged was necessary to establish a selective prosecution claim that: "[W]e would first require some evidence tending to show the existence of the essential elements of the defense and that the documents in the government’s possession would indeed be probative of these elements.” (Supra, at 1211-1212.)
Although by means of obtaining the statistical data he seeks the defendant may be able to establish that others have committed similar improprieties in regard to voter designation petitions in the past and have gone unprosecuted, that would only satisfy one half of his evidentiary burden under the *648 selective prosecution defense. The affirmation in support of the motion fails to provide the court with any reasonable basis for belief that there is any evidence extant to support the accusation made by the defense that the prosecutor’s motive for instituting this prosecution was politically motivated, designed to punish the defendant and his codefendants for their political affiliations. I have therefore determined that the defense has not met the minimum, threshold requirements that would support the granting of the type and extent of discovery sought (see, Matter of 303 W. 42nd St. Corp. v Klein, 46 NY2d 686).
The motion for discovery in regard to a discriminatory and selective prosecution claim is accordingly denied in all respects.
VI. THE MOTION TO DISMISS THE THREE COUNTS OF ELECTION LAW § 17-122 (7)
Three counts of the indictment charge the defendant with violating Election Law § 17-122 (7) — misconduct in relation to petitions. This statute provides that a person is guilty of a misdemeanor when: "Being a subscribing witness to a petition, provided for in the election law, for the designation or nomination of a candidate, or a petition for opportunity to ballot at a primary election, thereby makes a false statement or makes a false affidavit thereon”.
The defendant contends that this statute must be interpreted to include a scienter requirement that the statement, in addition to being factually false, was actually known to be false by the subscribing witness when he signed the petition. For purposes of this motion, the defendant has conceded that he did not in fact witness the signing of the three nominating petitions involved by the purported voter signatories appearing thereon. Indeed, he has apparently further conceded for purposes of this motion that these purported voter signatures were in fact forged. He has represented to the court that his defense at trial to these charges will be that these three bogus petitions were surreptitiously and unknown to him intermingled by others connected with the Pat Wagner campaign with a large batch of legitimate petitions assiduously garnered by him. He alleges that when he brought his valid petitions to the campaign headquarters he was instructed not to sign the witness attestation portion until they were checked for conformity with the Election Law requirements by campaign *649 professionals. He therefore left his petitions at campaign headquarters awaiting a call that they had passed inspection and were fit to be signed by him as the subscribing witness. When he subsequently received such a call, he went to campaign headquarters and was presented with a stack of nominating petitions for his signature. Believing that these petitions were the same legitimate ones he had originally handed in, he proceeded to subscribe all of them, en masse, mechanically, without bothering to scrutinize each petition. A fraud was thereby perpetrated upon him, as he unwittingly was tricked into signing three forged petitions among the many valid petitions he had solicited.
Plainly, if the defendant’s version of the events is believed by the jury, it would constitute a compelling defense to these charges if the statute is interpreted as containing the scienter element that he in fact knew that these three petitions contained forged voter signatures when he signed them. The necessity of such a construction is critical to the defendant’s ability to successfully defend against these charges.
The prosecutor has taken the position that this section of the Election Law constitutes a strict liability offense. He urges that all the People have to prove to establish the defendant’s guilt is that one or more of the voter signatures appearing on the petition were forged and that the defendant signed the petition as a subscribing witness. Whether or not the defendant knew one or more of the voter signatures on the petition were forged when he signed it would therefore not be determinative of his guilt if the offense is construed to be one of strict liability. The People have conceded that, consistent with their strict liability view of the offense, the Grand Jury was not instructed that the defendant’s actual knowledge of the falsity of any one or more of the voter signatures appearing on the petition at the time he subscribed it would have to be proven as a necessary element before they could vote to indict him on this offense. Consequently, if the defendant’s construction of the statute is adopted by the court, the three counts in issue would have to be dismissed.
Paradoxically, both parties insist that the court apply a strict construction analysis in interpreting the statute in urging their diametrically opposed positions. The defendant cites the accepted rule at common law that, in general, penal statutes are to be narrowly construed against the party seeking their enforcement and in favor of the person being prosecuted (McKinney’s Cons Laws of NY, Book 1, Statutes § 271). *650 Section 5.00 of the Penal Law expressly opts out of this narrow construction requirement for crimes specified in the Penal Law by providing that they "must be construed according to the fair import of their terms to promote justice and effect the objects of the law.” However, as this Election Law offense is not within the Penal Law, the common-law rule of narrow construction in favor of the defendant would appear to control the interpretation of this statute.
The People assert that a strict, narrow reading of this statute requires the conclusion that it contains no scienter element, as none is expressly set forth.
The defense counters by pointing to Penal Law § 15.15 (2), which provides as follows: "Although no culpable mental state is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of such offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime of mental culpability. This subdivision applies to offenses defined both in and outside this chapter.”
The legislative policy underlying this provision is encapsulated in the following statement by Judge Jasen in his dissenting opinion in People v Register (60 NY2d 270, 284): "Historically, our criminal law is based upon a theory of 'punishing the vicious will.’ (Pound, Introduction to Sayre, Cases on Criminal Law [1927], p XXXVI.) It is a deep-rooted part of our jurisprudence that, in the ordinary case, only those offenders who consciously choose to do evil rather than good will be punished. (Morissette v United States, 342 US 246, 250-251.)”
In the Morissette case (supra) the Supreme Court of the United States held that a defendant charged under a Federal statute with stealing government property, to wit, spent bomb casings from a desolate practice bombing site, could not be convicted unless the prosecution established beyond a reasonable doubt that he intended to steal them. His admissions at trial that he intentionally took these casings from the government site and sold them for scrap metal were held insufficient to support a conviction for stealing, when he simultaneously maintained he believed the casings had been abandoned by the government.
The court held that in construing a statute that codified a *651 crime at common law, such as stealing, which upon conviction necessarily entailed a serious besmirching of the defendant’s reputation and an authorized severe penalty of incarceration, the mens rea element of intent was an essential component of the crime. The failure of Congress to expressly set forth the element of intent in the statute was attributed to its being taken for granted in view of the firmly rooted, universally recognized requirement of scienter for crimes at common law.
The court distinguished those strict liability scienterless statutes and administrative ordinances classified as " 'public welfare offenses’ ” that are malum prohibitum rather than codifications of the classic malum per se crimes known at common law dealing with offenses "against the state, the person, property, or public morals” (supra, at 255). Examples of public welfare offenses cited by the court included the prohibition of the sale of liquor by a tavernkeeper to a habitual drunk regardless of the defendant’s lack of knowledge of the buyer; statutes prohibiting the sale of adulterated milk; and statutes regulating landlord responsibilities in regard to tenement houses. The common grounds asserted by the courts in upholding such strict liability statutory offenses were the overriding societal interest in promoting the public health, welfare and safety, which required a keen degree of diligence and care by the subjects of these "police regulations.” It was further emphasized that penalties associated with these offenses were generally minor and involved no serious stigma to a convicted offender’s reputation.
An examination of the cases urged by each of the parties in support of their mutually exclusive positions demonstrates the continuing viability of the teaching of Morissette (supra) that there is no precise delineation or a fixed formulation of "comprehensive criteria for distinguishing between crimes that require a mental element and crimes that do not. We attempt no closed definition, for the law on the subject is neither settled nor static.” (Supra, at 260.) This amorphous state of the law leads to incongruous results that are not easily reconciled. For example, in People v Dozier (72 AD2d 478) the crime of statutory rape, a class E felony, was held to be a strict liability offense insofar as knowledge by the male defendant that the female was under 17 was not an element. In contrast, in People v Cooper (24 NY2d 877) an Administrative Code of the City of New York provision making it a misdemeanor to fail to file a city sales tax return was held to contain a scienter element that the failure to file was willful, rather than merely an innocent failure to file.
*652 The factual circumstances of the act involved in the offense of being a subscribing witness to a nominating petition that contains a false statement were unknown to the common law. However, the underlying criminal conduct that is the essence of this offense is perjurious in nature. Perjury is one of the notorious crimes recognized by the common law (People v Teal, 196 NY 372; Hoormann v Climax Cycle Co., 9 App Div 579). As the inherent nature of this offense has its antecedent roots in the common-law crime of perjury, it should be construed as requiring the same mens rea element of knowledge that the statement subscribed and sworn to by the witness was known by him to be false. This result is in comportment with the court’s view that under all of the circumstances, justice and basic fairness requires that the defendant be permitted an opportunity to defend himself against these perjury-related charges by asserting a factual lack of knowledge defense that would constitute a complete defense to the perjury charges in chief.
Based upon the foregoing reasons, the defendant’s motion to dismiss the three counts of the indictment that charge him with the offense of misconduct in relation to petitions under Election Law § 17-122 (7) is granted due to the insufficiency of the legal instructions provided by the prosecutor to the Grand Jury concerning the scienter element of this offense. The prosecutor, pursuant to CPL 210.20 (4), is granted permission to resubmit these charges for the consideration of the Grand Jury upon proper instructions in conformance with this opinion.