OPINION OF THE COURT
Sandra J. Feuerstein, J.
Defendant has been charged with violating section 6513 (1) and section 7302 of the Education Law. Section 6513 (1) states: “Anyone not authorized to use a professional title regulated by this title, and who uses such professional title, shall be guilty of a class A misdemeanor.” Section 7302 states: "Only a *1040 person licensed or otherwise authorized to practice under this article shall practice architecture or use the title 'architect’.” The issue before this court is whether these statutes require proof of criminal intent. The People have moved to reargue a prior determination by this court on this issue. The defendant has moved for dismissal of the information on the ground that no scienter requirement is stated therein.
Section 15.10 of the Penal Law states: "The minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which he is physically capable of performing. If such conduct is all that is required for commission of a particular offense, or if an offense or some material element thereof does not require a culpable mental state on the part of the actor, such offense is one of 'strict liability.’ If a. culpable mental state on the part of the actor is required with respect to every material element of an offense, such offense is one of 'mental culpability.’ ”
Clearly no culpable mental state has been specifically enunciated by the statutes.
Section 15.05 of the Penal Law defines the culpable mental state utilized in this State’s criminal statutory scheme.
The People contend that section 6513 (1) and section 7302 are strict liability statutes. Defendant contends that the People must not only prove the scienter requirement but that the failure to state the culpable mental state renders the information deficient.
Section 15.15 (2) of the Penal Law states: "Although no culpable mental state is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of such offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime of mental culpability. This subdivision applies to offenses defined both in and outside this chapter.” However, this section has not precluded the imposition of a strict liability standard for certain proscribed activity, both within (People v Davis, 112 Misc 2d 138; People v Newton, 72 Misc 2d 646) and outside of the Penal Law. (People v Hamburg Chrysler Plymouth, 43 NY2d 680; People v Northrop, 99 Misc 2d 383; People v O’Rourke, 83 Misc 2d 175.) And as noted in *1041 People v Mik (130 Misc 2d 904, 908), there have been few, if any, statutory crimes for which the Legislature has stated " 'This is a statute of strict liability.’ ”
"While the absence of any requirement of mens rea is usually met within statutes punishing minor or police offenses (for which fines, at least in the first instance, are ordinarily the penalties), we think that interpretation of legislative intent as dispensing with the knowledge and wilfulness as elements of specified crimes is not to be restricted to offenses differentiable upon their relative lack of turpitude. Where the offenses prohibited and made punishable are capable of inflicting widespread injury, and where the requirement of proof of the offender’s guilty knowledge and wrongful intent would render enforcement of the prohibition difficult if not impossible (i.e., in effect tend to nullify the statute), the legislative intent to dispense with mens rea as an element of the offense has justifiable basis.” (United States v Greenbaum, 138 F2d 437, 438.)
Initially, the court rejects the proposition by counsel that it should impose the standard of culpability of a similar crime for which a mental state is statutorily mandated. The prosecutor would impose, if any, a mental state of intent to create reliance upon a misrepresentation as required in section 190.25 of the Penal Law. Defense counsel, contending that the charge at hand closely resembles one for perjury, would have this court rule that the State must demonstrate that this defendant intentionally made a false statement of his credentials, citing Morissette v United States (342 US 246) and People v Miller (138 Misc 2d 639). Both of these cases, however, dealt with the codification of activity which was criminal at the common law, stealing and perjury, respectively.
"The factual circumstances of the act involved in the offense of being a subscribing witness to a nominating petition that contains a false statement were unknown to the common law. However, the underlying criminal conduct that is the essence of this offense is perjurious in nature. Perjury is one of the notorious crimes recognized by the common law (People v Teal, 196 NY 372; Hoormann v Climax Cycle Co., 9 App Div 579). As the inherent nature of this offense has its antecedent roots in the common-law crime of perjury, it should be construed as requiring the same mens rea element of knowledge that the statement subscribed and sworn to by the witness was known by him to be false.” (People v Miller, 138 Misc 2d 639, 651, supra.)
*1042 Similarly, in People v Chester (50 NY2d 203), a violation of section 79-a of the Lien Law is specifically categorized as larceny' and is held to require proof of intent. However, the unauthorized use of a professional title was not a crime at common law and absent a clear showing that the prohibited conduct is completely encompassed within a common-law crime, a thorough analysis of the statutes and the intent of the Legislature must be pursued.
In determining whether or not a particular criminal statute, silent upon the issue of mental culpability, is in fact one of strict liability, the court is bound to examine several factors to establish a nonexpressed intention on the part of the enacting Legislature, including the nature of the act itself and the purpose for which it is proscribed, enforcement and historical precedent (People v Daniels, 118 Cal App 2d 403, 257 P2d 1038) as well as the relationship between the prohibited act and protection of public safety, health, morals or welfare. (People v Munoz, 9 NY2d 51, and cases cited therein.)
In People v Miller (138 Misc 2d 639, supra) the court dismissed several counts of an indictment on the ground that the scienter requirement had not been charged to the Grand Jury. Following Morissette v United States (342 US 246, supra), the court distinguished between the case before it, a violation of the Election Law, where "the underlying criminal conduct that is the essence of th[e] offense is perjurious in nature” and the cases which charged "public welfare offenses”. (Supra, at 650-651.) Public welfare offenses cited by the Morissette court included the sale of liquor to a habitual drunk, the sale of adulterated milk, and violations of obligations of landlords in regard to tenement houses. "The common grounds asserted by the courts in upholding such strict liability statutory offenses were the overriding societal interest in promoting the public health, welfare and safety, which required a keen degree of diligence and care by the subjects of these 'police regulations.’ ” (Supra, at 650-651.)
The traditional distinction between those activities which are malum in se as opposed to malum prohibitum, examined by the Morissette and Miller courts, has been examined in other contexts as well.
In People v Northrop (99 Misc 2d 383, 384-385, supra), holding that sections of local ordinances did not require proof of scienter, the court stated: "It is fairly well established that criminal intent is not an essential element for conviction *1043 where the offense is malum prohibitum and not malum in se, that is, where the proscribed conduct is wrong because of legislative pronouncement rather than its intrinsic nature (People v Werner, 174 NY 132; People v H.W.S. Holding Corp., 12 Misc 2d 125) and in People v D’Antonio (150 App Div 109, 113), a case involving a violation of the former Liquor Tax Law wherein defendant failed to remove screens and other obstructions from a tavern window during hours when sale of liquor was prohibited, the court said: '[t]here is no doubt about the general rule that one cannot be convicted of a crime without proving a criminal intent, but this rule has its exceptions. Statutes which are in their nature police regulations, as the one here under consideration is, impose criminal penalties, irrespective of any intent and obviously for the purpose of requiring a degree of diligence for the protection of the public against violations.’ ”
In Stern, Henry & Co. v McDermott (38 Misc 2d 50, affd 19 AD2d 864) plaintiff, a custom house broker, sought a share in the compensation received by defendant attorney in a case forwarded to the lawyer by the plaintiff. The court stated in relevant part:
"The fact that there may have been no intent on the plaintiff’s part to commit a misdemeanor is of course immaterial. An act malum prohibitum is not excused by good faith.
"A guilty mind or corrupt purpose is not an essential element of a misdemeanor created by statute under the police power. All that is required for its commission is the intentional doing of the prohibited act itself, regardless of whether the doer intended to commit the crime resulting from the intentional act. When one deliberately violates a positive law which he is presumed to know, he cannot be excused on the ground that he intended no wrong, or that his animating desire was essentially praiseworthy. (22 C.J.S., Criminal Law, § 30.)” (Supra, at 55-56.)
Similarly, the promulgation of section 6513 (1) and section 7302 of the Education Law was part of a reorganization of previously scattered statutory regulations. In establishing a section of the Education Law to deal solely with the "professions” the Legislature created a pervasive regulatory' scheme to provide for licensing and administration of those careers which have a wide and potentially harmful effect upon the health and welfare of the citizens of this State. Thus, the subject of the statute is within the scope of prior legislative *1044 enactments which have established criminal liability without the element of intent.
A further consideration is the practical necessity of enforcement. In People v Ortiz (125 Misc 2d 318, 327) the court held that the imposition of a scienter requirement upon Local Laws, 1983, No. 64 of the City of New York, which prohibited possession of knives, would render enforcement "difficult if not impossible”. (See also, United States v Greenbaum, 138 F2d 437, supra.) Similarly, to require intent of the actor charged with violations of the sections of the Education Law regulating the "professions” would seriously impede the enforcement of the statute, thus negating the impact of the legislation and hampering the effort to protect the public from the inherent harm in trusting their lives and property to nonlicensed individuals passing themselves off as professionals in a particular field. Indeed, section 1476 (1), the forerunner" of the present section 7302 of the Education Law, Stated that the purpose of the section was "to safeguard life, health and property” and section 1263 (2) (b), precursor to section 6513, precluded even the use of "any designation tending to imply” a professional degree.
Based upon the foregoing, the court finds that section 6513 (1) imposes a strict liability upon a defendant who has been found to have acted in the manner proscribed by sections 6513 and 7302 of the Education Law. This being so, defendant’s motion to dismiss is denied.