*262 OPINION OF THE COURT
Joseph J. Maltese, J.
This decision discusses the elements of the crime of unauthorized practice of medicine under Education Law § 6512 (1) and whether the process of revoking a physician’s license is constitutional.
The defendant, a former licensed physician in the State of New York, was charged with 13 counts (reduced to seven counts on motion of the People during the course of the trial) of practicing medicine without a license in violation of Education Law § 6512 (1) which states: "Anyone not authorized to practice under this title who practices or offers to practice or holds himself out as being able to practice in any profession in which a license is a prerequisite to the practice of the acts, or who practices any profession as an exempt person during the time when his professional license is suspended, revoked or annulled, or who aids or abets an unlicensed person to practice a profession, or who fraudulently sells, files, furnishes, obtains, or who attempts fraudulently to sell, file, furnish or obtain any diploma, license, record or permit purporting to authorize the practice of a profession, shall be guilty of a class E felony.”
A jury found the defendant guilty of all of the remaining seven counts of unauthorized practice of medicine without a licence. The defendant now moves to set aside that verdict.
The defendant claims that the notice requirements of the civil hearing to revoke his medical license and the notice requirements to advise him that his license was revoked as a result of the civil hearing are inadequate. He asserts that neither notice mandates "actual knowledge” of the civil hearing or the revocation of his license and that each violates "due process” and consequently is unconstitutional. Moreover, the defendant argues that the State cannot criminally prosecute him for violating the determination of the civil proceeding which revoked his medical license, because the standard of proof required in the civil proceeding was a mere "preponderance of the evidence” and the instant criminal case requires proof "beyond a reasonable doubt”.
The defendant argues that "actual knowledge” should be an element of the offense. He further argues that if the defendant did not have "actual knowledge” of the civil hearing or the subsequent revocation of his medical license, then a jury cannot find the defendant guilty "beyond ¿ reasonable doubt” in the criminal prosecution of Education Law § 6512 (1).
*263 The Assistant Attorney-General argues that the statute does not require that the People prove "actual knowledge” of the revocation of the physician’s license, but only that a notice be sent to the defendant which would give him "constructive knowledge” of the revocation. Moreover the People argue that this court should not create such an element of the offense. Lastly the People assert that the defendant cannot challenge the constitutionality of the underlying revocation of the defendant’s license in this criminal prosecution.
CONSTITUTIONALITY
The process of revoking or suspending a physician’s license is constitutional in that it provides for "due process” through the civil hearing process of giving notice to the defendant, with an opportunity to be heard, to present evidence on his own and to confront the evidence against him. Prosecuting a person who has notice of the revocation of his medical license after such an opportunity to participate in the hearing is a constitutionally valid exercise of the State’s discretion in safeguarding the public’s health and welfare (People v Twine, 202 AD2d 613 [2d Dept 1994]; see also, Matter of Bell v Board of Regents, 295 NY 101 [1946]; Matter of Allen v Board of Regents, 140 AD2d 824 [3d Dept 1988]).
The United States Supreme Court has upheld the constitutionality of regulating the practice of medicine as being a reasonable exercise of the State’s police power to regulate (see, Dent v West Virginia, 129 US 114 [1889]; see also, People v Cole, 219 NY 98 [1916]). Moreover, there is a strong presumption that a statute duly enacted by the Legislature is constitutional. The Court of Appeals has held that to declare a law unconstitutional, its invalidity must be demonstrated beyond a reasonable doubt (Matter of Van Berkel v Power, 16 NY2d 37 [1965]).
PROCEDURAL DUE PROCESS
A license to practice medicine is property, entitled to constitutional protection, and therefore may not be revoked without due process (Damino v O’Neill, 702 F Supp 949 [ED NY 1987]). Due process requires that the government act reasonably in selecting and employing a means of notice likely to inform the individual of the proceeding (Weigner v City of New York, 852 F2d 646, 649-650 [2d Cir 1988]).
While the New York State Department of Education licenses and registers physicians (Education Law §§ 6501, 6520 et seq.), *264 the State Board for Professional Medical Conduct (State Board), within the New York State Department of Health, governs matters of professional misconduct (Public Health Law § 230 [1]). From among the members of the State Board, Committees on Professional Conduct are appointed to conduct disciplinary proceedings on licensed physicians who are charged with misconduct (Public Health Law § 230 [5], [6]).
The New York State Constitution decrees that the "protection and promotion of the health of the inhabitants of the state are matters of public concern” (NY Const, art XVII, § 3). Reports of mistreatment, neglect, or mistreatment are governed by section 2803-d of the Public Health Law. However, "misconduct” is determined by sections 6530 and 6531 of the Education Law. The licensing and professional requirements for the medical profession are contained in article 131 of the Education Law (§§ 6520-6529).
As a matter of procedural due process, a licensed physician is afforded notice of charges against him by Public Health Law § 230 (10) (b). The notice of the civil hearing from the State Board for Professional Medical Conduct of the Department of Health advises the licensed physician of the date, time and place of the hearing, the physician’s right to file written answers to the charges, the right to appear in person and be represented by counsel, the right to produce witnesses and evidence in his behalf, the right to cross-examine witnesses and examine evidence produced against him and the right to subpoena witnesses and evidence on his own behalf. Service of the charges and notice of the hearing must be served "personally by the board at least twenty days before the hearing.” (Public Health Law § 230 [10] [d].) If personal service cannot be made "after due diligence”, notice is served by registered or certified mail at least 15 days before the hearing (Public Health Law § 230 [10] [d]).
The hearings are stenographically recorded and are conducted in accordance with the State Administrative Procedure Act. The committee conducting the hearing is not bound by the rules of evidence, but its conclusions must be based upon a preponderance of the evidence (Public Health Law § 230 [10] [c], [e], [f]).
After the Board of Health makes a determination that it is suspending or revoking a physician’s license it must then advise the physician of such change in his or her professional status (Public Health Law § 230 [10] [h]). In a prosecution for unauthorized practice of medicine, the People must demon *265 strate that the licensee was notified that his license to practice medicine was revoked. Only after demonstrating that the defendant was notified of such revocation of his or her license can the State assert that the defendant knowingly or intentionally practiced medicine without authorization. Following the decision of the Board, either party may appeal to the Administrative Review Board (Public Health Law § 230 [10] [i]; § 230-c [4]). An order of the Administrative Review Board can be reviewed by the Appellate Division, Third Department, in a CPLR article 78 proceeding (Public Health Law § 230-c [5]).[1]
The Department of Education is statutorily authorized to share information concerning State disciplinary determinations with other public agencies responsible for professional regulation (Education Law § 6510 [8]). Additionally, State disciplinary and licensure boards are required to report disciplinary actions against physicians to the Federally established National Practitioner Data Bank (see, 42 USC §§ 11101-11152).
THE NOTICE REQUIREMENT
Clearly, the text of Education Law § 6512 (1) does not expressly require "actual knowledge” on the part of the defendant to be convicted of this statute. Education Law § 6510 (4) (c) only provides that an order revoking a license "shall be served upon the licensee personally or by certified mail to the licensee’s last known address and such service shall be effective as of the date of the personal service or five days after mailing by certified mail.” (Emphasis added.)
Public Health Law § 230 (10) (h) provides: "The findings, conclusions, determination and the reasons for the determination of the committee shall be served upon the licensee and the department within sixty days of the last day of hearing. Service shall be either by certified mail upon the licensee at the licensee’s last known address and such service shall be effective upon receipt or seven days after mailing by certified mail whichever is earlier or by personal service and such service shall be effective upon receipt.”
While the Education Law does not mandate that the defendant have "actual knowledge” of the license revocation, Penal Law § 15.15 (2) states that: "Although no culpable mental state *266 is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of such offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime of mental culpability. This subdivision applies to offenses defined both in and outside this chapter.” (Emphasis added.)
However, strict liability statutes proscribing behavior affecting public safety health and morals or social welfare have been upheld. In People v Mitchell (77 NY2d 624 [1991]), the Court of Appeals held that in order to sustain a conviction for criminal possession of stolen property (credit cards) in the fourth degree (Penal Law § 165.45 [2]), the People must prove the defendant knew the property was stolen, but did not have to prove that the defendant knew she possessed the credit cards. The Court of Appeals stated "[i]nasmuch as the Legislature did not protect professional pickpockets from the full consequences of their criminal acts by adding the extra ingredient of a specific culpable mental state as to the credit card * * * we certainly should not do so contrary to the plain expression of its enactment.” (Supra, at 628.)
Nonetheless, criminal statutes have been found enforceable where knowledge was not a required element. In People v Anyakora (162 Misc 2d 47 [Sup Ct, NY County 1993], affd 238 AD2d 216 [1st Dept 1997]), the court held that Public Health Law § 2805-b (2) (b), which punishes medical practitioners who refuse to treat emergency patients, required that the only mental state to be proven is that the medical practitioner "voluntarily” refused to treat a patient. The defendant need not have "actual knowledge that the person they refused to treat was in need of emergency medical treatment at the time they refused to treat them.” (162 Misc 2d, at 53.) In People v Simon (148 Misc 2d 845, 846 [Crim Ct, Bronx County 1990]), the Bronx County Criminal Court held that the crime of criminal possession of a weapon in the fourth degree, Penal Law § 265.01 (1), has no knowledge requirement and all that is required is that the defendant " 'possesses any firearm’ ”. Judge Alan Lebowitz in People v Griffin (162 Misc 2d 764 [Crim Ct, Kings County 1994]) held that Vehicle and Traffic Law § 511-d, aggravated failure to answer appearance tickets or pay fines, is a strict liability statute and proof of notice of the suspensions of one’s license is not required.
*267 Additionally, in People v Merriweather (139 Misc 2d 1039 [Nassau Dist Ct 1988]) the Nassau District Court was dealing with a violation of Education Law § 6513 (1), unauthorized use of a professional title. Under Education Law § 6513 (1) "[a]nyone not authorized to use a professional title regulated by this title, and who uses such professional title, shall be guilty of a class A misdemeanor.” The court held that the statute imposes strict liability upon a defendant, in the case of an architect, who has been found to have acted in a manner proscribed by Education Law § 6513 (1). The court stated that: "[i]n establishing a section of the Education Law to deal solely with the 'professions’ the Legislature created a pervasive regulatory scheme to provide for licensing and administration of those careers which have a wide and potentially harmful effect upon the health and welfare of the citizens of this State. Thus, the subject of the statute is within the scope of prior legislative enactments which have established criminal liability without the element of intent.” (Supra, at 1043-1044 [emphasis added].)
Driving Without a License — Vehicle and Traffic Law § 511
In analyzing the notice and knowledge of revocation or suspension requirement of the Education Law, it is instructive to review the law governing the operation of a motor vehicle without a driver’s license. Under Vehicle and Traffic Law § 511 (1) (a) a person is guilty of aggravated unlicensed operation of a motor vehicle in the third degree when he operates a vehicle "while knowing or having reason to know” that his license or privilege to drive has been suspended or revoked. A violation of Vehicle and Traffic Law § 511 (2)[2] is an unclassified misdemeanor and a violation of Vehicle and Traffic Law § 511 (3)[3] is a class E felony. Both Vehicle and Traffic Law § 511 (2) and (3) provide for minimum mandatory jail sentences and fines. The level of the crime increases depending on the number of times *268 the defendant’s driver’s license has been suspended. However, the People are not required to prove that the defendant knew or had reason to know the number of times he had been suspended, only that he knew he was suspended at the time he was driving (People v Pabon, 167 Misc 2d 214 [Crim Ct, Bronx County 1995]).
Additionally, Vehicle and Traffic Law § 214 establishes that if an affidavit from an employee of the Department of Motor Vehicles (DMV) with the responsibility of mailing notices and orders affirms that a mailing was done pursuant to the DMV procedures, there is a presumption that the said notice or order was produced and mailed. This type of notice is legally sufficient to meet the "know or have reason to know” requirement of Vehicle and Traffic Law § 511 (People v Pabon, supra, at 219).
Whether the defendant "knew or had reason to know” that his license was suspended or revoked is a question of fact which must be determined beyond a reasonable doubt. (People v Gabriel, 164 Misc 2d 473, 476 [Crim Ct, Queens County 1995].) Compliance with the mailing statute "merely gives the prosecution the benefit of a rebuttable presumption at the time of trial that the defendant knew or had reason to know that his privilege to drive had been suspended. It does not preclude the People from establishing knowledge by other means” (supra, at 476; see also, People v Rodriguez, 165 Misc 2d 684 [Crim Ct, Queens County 1995]; People v Quarles, 168 Misc 2d 638 [Rochester City Ct 1996]).
Education Law § 6512
Only subdivision (2) of Education Law § 6512, which deals with others who aid and abet unlicensed persons, contains a scienter or "knowledge” requirement. That subdivision of the statute states that: "Anyone who knowingly aids or abets three or more unlicensed persons to practice a profession or employs or holds such unlicensed persons out as being able to practice in any profession in which a license is a prerequisite to the practice of the acts, or who knowingly' Bids or abets three or more persons to practice any profession as exempt persons during the time when the professional licenses of such persons are suspended, revoked or annulled, shall be guilty of a class E felony.” (Education Law § 6512 [2] [emphasis added].)
The Legislature did not impose the "knowledge” requirement in subdivision (1) of section 6512 of the Education Law, which is the charge here. This distinction is rational. If one is *269 employed in a doctor’s office without knowing that the doctor is unlicensed, he or she could not be liable for aiding or abetting the unauthorized practice of medicine.
In People v Twine (202 AD2d 613 [2d Dept 1994], supra), the Appellate Division, Second Department, affirmed the conviction of a doctor under Education Law § 6512 (1) stating that "there was legally sufficient evidence establishing that the defendant received notice of the revocation of her license.” (Emphais added.) However, in Twine the defendant admitted she received notice.
UNAUTHORIZED PRACTICE OF MEDICINE
Factors to be considered in determining whether a person has violated restrictions on the practice of medicine include: whether there was a diagnosis determining a disease, infirmity or physical condition; whether a remedy or treatment was prescribed; whether the act or acts performed by defendant were such as to endanger the public health; and whether defendant invaded the territory of the profession by specific actions solely within the province of a duly trained and knowledgeable medical practitioner (People v Rubin, 103 Misc 2d 227 [Crim Ct, Queens County 1979]).
In a prosecution for unlicensed practice, the burden is on the defense to show that the defendant was actually licensed when the State shows he is not licensed. The Appellate Division in People v Varas (110 AD2d 646 [2d Dept 1985]) held that after the Attorney-General demonstrated that no one with the defendant’s name was recorded as a licensed doctor, the burden shifted to the defendant to show that she was a doctor. Additionally, the only time the Court discussed "knowledge” was in describing the activities of the codefendant who was charged with aiding and abetting the doctor under subdivision (2) of Education Law § 6512.
The defense has argued that imposing criminal sanctions upon a person who has not received "actual knowledge” of the revocation makes the law a "strict liability” statute. It may be argued that applying subdivision (1) of Education Law § 6512 to a person who was never granted a license does make it a strict liability statute, as one cannot mistakenly believe that he or she retained the privilege to practice medicine, when he or she never had one in the first place. However, those are not the facts of this case. Here the defendant had possessed a valid license and registration to practice medicine, but it was revoked after a hearing.
*270 Notwithstanding the foregoing, this court finds that there is a scienter requirement as to "practicing” medicine. The People must show that the doctor knowingly practiced medicine (see, People v Munoz, 9 NY2d 51 [1961]). Even a strict liability crime requires that the defendant knows that he is committing or participating in the act. As to knowledge of the revocation, the People demonstrated that notice of the hearing and notice of the subsequent revocation were mailed to the defendant pursuant to the statutory requirements.
NOTICE AND KNOWLEDGE
The issue is whether notice is equivalent to knowledge. The mailing of the notice of revocation pursuant to the statute creates a rebuttable inference that the defendant knew that his license was revoked and that he was no longer authorized to practice medicine in the State of New York. The defendant may rebut this presumption by showing that service of the notice of his revocation was defective and that he did not receive the notice. If he demonstrated that he did not receive the notice, then he may not have possessed the knowledge that his license was revoked. This is an issue of fact to be presented to the jury.
THE JURY CHARGE
This court held and charged to the jury the following three elements, which must be proven beyond a reasonable doubt, in order to convict the defendant of unauthorized practice of medicine pursuant to Education Law § 6512 (1): (1) the defendant was not authorized to practice medicine in the State of New York; (2) the defendant knew that he was not authorized to practice medicine in the State of New York; and (3) the defendant, knowingly or intentionally practiced, or offered to practice or held himself out to be licensed to practice medicine in the State of New York.
Additionally, this court verbally held and now confirms that if the People prove beyond a reasonable doubt that notice was mailed by certified mail to the defendant’s last known address, as prescribed in Education Law § 6510 (4) (c), then the jury may or may not infer that the defendant "knew that he was not authorized to practice medicine in the State of New York.” If the People do not prove beyond a reasonable doubt that the notice was either served personally upon the defendant or was mailed by certified mail to the defendant’s last known address, then the jury was told that they must find the defendant not guilty.
*271 DISCUSSION
The People at trial demonstrated that after three unsuccessful attempts of personal service of the notice of charges upon the defendant, the Health Department mailed the notices to the defendant via certified and regular mail. Neither envelope was returned to the Health Department. It was further shown that the defendant was then mailed a notice of his revocation. Mail carrier Calvin Woodrow Conner testified[4] that he personally delivered-the envelope to the defendant’s last known address, but that the envelope was "refused” by someone other than the defendant. Mr. Conner further testified that although he did not deliver the second envelope it bore the marking of the United States Postal Service. In this case the People presented evidence that the revocation was mailed from the Department of Health.
Furthermore, the People presented evidence of "actual knowledge” on the part of the defendant. The People demonstrated that the defendant had been notified by the National Practitioner’s Data Bank that his license had been revoked and that the defendant had responded that: "[he had] not received notice of this action by the reporting entity. Rather, about 1/11/95, I was issued registration[5] by N.Y. Education Department, valid through 9/30/97. If such action was indeed taken by reporting entity, it represents an egregious violation of civil rights, and appropriate legal remedy will be sought,”
The notice by the National Practitioner Data Bank and the defendant’s response were all dated prior to the dates of the alleged criminal incidents, for which the defendant was convicted with the exception of count nine, which occurred before the notice and response.
A reasonable jury could conclude "beyond a reasonable doubt” that the notice was sent and can thereby infer that it *272 was received, thereby giving the defendant knowledge that his license was revoked. Moreover, the defendant clearly acknowledged by his response to National Practitioner Data Bank that he had "actual knowledge” that his license was revoked. Therefore, there was sufficient evidence available to the jury where a reasonable jury could find the defendant guilty beyond a reasonable doubt.
Accordingly, the defendant’s application to set aside the jury verdict is denied.

. This process was clearly known to the defendant who commenced an article 78 action to review a determination of the Commissioner of Education when his license was suspended in 1986. (See, Matter of Kleiner v Sobol, 161 AD2d 987 [3d Dept 1990].)

. A person is guilty of aggravated unlicensed operation of a motor vehicle in the second degree when having been previously convicted of aggravated unlicensed operation of a motor vehicle in the third degree in the preceding 18 months he commits the same offense again; or such person has in effect three or more suspensions on at least three separate dates.

. A person is guilty of aggravated unlicensed operation of a motor vehicle in the first degree when having been previously convicted of aggravated unlicensed operation of a motor vehicle in the second degree and is operating a motor vehicle while under the influence; or is operating a motor vehicle while such person has in effect 10 or more suspensions imposed on at least 10 separate dates.

. With the consent of the People and the defendant the post-office mail carrier testified over a speaker phone with the defendant, his counsel, the Assistant Attorney-General, a court reporter, and the court present. The testimony was transcribed by the court reporter and the admissible testimony thereof was read to the jury. This was done as an accommodation to the defendant’s counsel since the rules regarding a post-office employee available to testify were not followed and the mail carrier would not otherwise have been available to testify (see, 39 CFR 265.12, requiring 10 days’ notice, a written summary of requested testimony, and notification to the General Counsel).

5. The defendant had been issued a New York State medical registration certificate in January of 1995 with an expiration date of September 30, 1997 (see, People v Kleiner, 172 Misc 2d 352 [Sup Ct, Richmond County 1997]).