OPINION OF THE COURT
Julius Vinik, J.
The defendant, as part of his omnibus motion, moves the court to inspect the Grand Jury minutes and upon inspection to dismiss the indictment. The defendant contends that the evidence submitted to the Grand Jury did not make a prima facie case and the instructions by the People rendered the proceeding defective.
In the instant case the defendant was indicted for the crimes of robbery in the first degree (1st count), robbery in the second degree (2d count), and criminal use of a firearm in the first degree (3d count).
The motion to inspect the Grand Jury minutes is granted.
The court has examined the Grand Jury minutes for legal sufficiency pursuant to CPL 210.20 (subd 1, par [b]). The standard applied by the court is “whether there was ‘competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof’ (CPL 70.10, subd 1).” (People v Warner-Lambert Co., 51 NY2d 295, 298.) In the context of a Grand Jury procedure, legally sufficient means prima facie, not proof beyond a reasonable doubt (People v Mayo, 36 NY2d 1002, 1004). Based upon this criteria, the court finds the evidence adduced before the Grand Jury legally sufficient to support counts Nos. 1 and 2 of the indictment. Count No. 3 will be dealt with later on in this decision.
Next, the court will consider whether the Grand Jury proceeding was defective (CPL 210.20, subd 1, par [c]). CPL 210.35 (subd 5), as is relevant, reads as follows:
“A grand jury proceeding is defective * * * when * * *
“5. The proceeding otherwise fails to conform to the requirements of article [190] to such degree that the integrity thereof is impaired and prejudice to the defendant may result.”
The District Attorney, as legal advisor, is entrusted with the duty of instructing the Grand Jury concerning the law *391 or any matter properly before it (see CPL 190.25, subd 6). With respect to the Grand Jury instructions, it is normally sufficient for the District Attorney to read the appropriate Penal Law section (People v Calbud, Inc., 49 NY2d 389). In this case, the District Attorney did read the appropriate Penal Law sections for counts Nos. 1 and 2 but certain other errors were committed during the Grand Jury proceeding.
Testimony was received into evidence that the defendant was arrested as a result -of a conversation between the arresting officer and the complaining witness. This was error. Such testimony is impermissible bolstering since in effect it says that the defendant was arrested because the complaining witness identified him (People v Brown, 91 AD2d 639). In People v Tufano (69 AD2d 826), the court held it was error to allow a detective to testify that he arrested defendant after a conversation with a codefendant, since such would indicate that the codefendant implicated the defendant and constitute an indirect use of hearsay statements. The court is also troubled by the three-week delay between the initial presentment on May 26, 1983 and the charge to the Grand Jury on June 14, 1983.
None of these errors either individually or collectively are so extreme that the integrity of the Grand Jury was impaired as to counts Nos. 1 and 2. Therefore, the motion to dismiss those counts is denied.
The court will now examine count No. 3. Although the District Attorney read the appropriate Penal Law section for the crime of criminal use of a firearm in the first degree, he failed to define or explain to the Grand Jury what class B violent felony offense was being used as the underlying felony. This was error. The Grand Jury could not know nor be asked to speculate on what class B violent felony offense would serve as the underlying felony or what the elements of such underlying felony would be.
While the crime of robbery in the first degree was not charged as the underlying class B violent felony offense, it is clear that such was the intent of the People. Whether such crime may properly serve as the underlying felony appears to be undecided in this jurisdiction. In People v *392 Serrano (119 Misc 2d 321) the court held that the crime of criminal possession of a weapon, second degree, may not serve as the underlying felony for charging the crime of criminal use of a firearm, but declined to pass on the question of whether any other class B or C violent felony offense may serve as the underlying felony (see People v Serrano, supra, p 325, n).
The crime of criminal use of a firearm was created in 1980 as part of the gun control legislation. Its objective was to increase the penalties for those who use handguns during the commission of certain felonies (Hechtman, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 265.09, 1982-1983 Pocket Part, p 42; People v Serrano, 119 Misc 2d 321, 325, supra). “This objective is advanced, albeit in a roundabout way, by converting certain B or C violent felony offenses (e.g., forcible rape in the first degree) which do not contain use or display of a gun as a statutory element of the crime (although such may be a factual element thereof) into armed felony offenses. As such, those offenses then become subject to mandatory prison sentences and stricter plea bargaining limitations (Hechtman, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 265.09, 1982-1983 Pocket Part, p 42)” (People v Serrano, 119 Misc 2d 321, 325, supra). Thus it is obvious that only violent felony offenses which are not armed felony offenses should serve as underlying predicates when charging the crime of criminal use of a firearm. Since the crime of robbery in the first degree is already an armed felony offense, it would not appear to be the type of felony envisioned by the Legislature to be used as the underlying felony.
Use of a robbery in the first degree (Penal Law, § 160.15, subd 4), as the underlying felony, results in the following reading for the crime of criminal use of a firearm (Penal Law, § 265.09, subd [2]; count 3): “A person is guilty of criminal use of a firearm in the first degree when he [forcibly steals property and when in the commission of the crime or immediate flight therefrom, he or another participant in the crime displays what appears to be a handgun] * * * and * * * displays what appears to be a [handgun].”
*393 Such a redundant reading makes little sense. It is inconceivable that the Legislature intended that display of a handgun be proven twice. By making possession of a loaded weapon a separate subdivision of section 265.08 of the Penal Law, the Legislature has indicated that possession (or display in this case) should be a separate element not present in the underlying felony (People v Serrano, 119 Misc 2d 321, 324, supra). Accordingly, this court holds as a matter of law that no B or C armed violent felony may serve as the underlying felony when charging the crime of criminal use of a firearm.
Furthermore, there is additional support for this conclusion. A close examination of counts Nos. 1 and 3 reveals that there may be a problem of multiplicity because both the elements and grade of each count are identical. “Multiplicity is the charging of a single offense in several counts” (United States v Thompson, 624 F2d 740, 742). The vice of multiplicity is that it may lead to multiple sentences for the same offense[1] (United States v Reed, 639 F2d 896, 904). In addition “the prolix pleading may have some psychological effect upon a jury by suggesting to it that defendant has committed not one but several crimes” (United States v Mamber, 127 F Supp 925, 927).
Determining whether two counts are multiplicious can be a subtle and difficult question. The Federal approach in answering this question may be stated briefly. The traditional inquiry is whether each offense charged requires proof of a fact which the other does not (United States v Morales, 460 F Supp 666, 667; United States v Chrane, 529 F2d 1236, 1238). Oftentimes, however, the test appears to be of little value and the court focuses on legislative intent in determining whether separate offenses are involved (United States v Reed, 639 F2d 896, 905, supra). If any doubt exists, it must be resolved against turning a single transaction into a multiple offense (United States v Chrane, supra, p 1238).
*394 In New York, CPL 200.20 (subd 1) is relevant and reads as follows: “An indictment must charge at least one crime and may, in addition, charge in separate counts one or more other offenses” (emphasis supplied). It thus appears that the charging of the same offense in separate counts of an indictment would violate New York law.
It is undisputable that neither count as charged contains an element which is not an element of the other. Moreover, the labeling of an offense under two different names does not change the fact that multiplicity may exist if both are charged in separate counts of the indictment. Since counts Nos. 1 and 3 contain the same elements they are multiplicious.
Since multiplicity is a problem of pleading, a violation is rarely fatal to the entire indictment (United States v Robinson, 651 F2d 1188, 1194, cert den 454 US 875). This is so because multiplicity may be remedied by an election of counts by the prosecution or by the correct instructions given by the court[2] (United States v Brandom, 320 F Supp 520, 525). While multiplicity may not be reversible error, the use of multiplicious counts in pleading is strongly discouraged (United States v Allied Chem. Corp., 420 F Supp 122,123-124; see, also, United States v Robinson, 651 F2d 1188,1194, supra; United States v Sue, 586 F2d 70, 71; cf. United States v Radue, 486 F2d 220, 222, cert den 416 US 908).
Because of the legislative intent and multiplicity, it is clear that robbery in the first degree may not serve as the underlying felony when charging the crime of criminal use of a firearm. Since the People failed to prove prima facie a proper underlying felony for count No. 3, the evidence as to that count is legally insufficient. Accordingly, count No. 3 is dismissed.
The balance of defendant’s motion is denied.

. This may be a vice of no consequence in New York because convictions arising out of the same transaction require the imposition of concurrent time (Penal Law, § 70.25, subd 2; People v Jackson, 73 AD2d 1060). Nothing in the law, however, prohibits different authorized sentences from being imposed for convictions of the same grade offense as would be possible in the instant case.

. Since the elements of counts Nos. 1 and 3 are identical, it is likely that either the People would move before trial to dismiss count No. 3 or that a Trial Judge would not charge count No. 3 so as to avoid the possibility of repugnant verdicts.