OPINION OF THE COURT
John M. Leventhal, J.
Defendant moves to dismiss counts 1 through 10 and 24 through 27 of the indictment on the ground that each count is duplicitous because each count charges multiple acts in violation of multiple court orders.
In deciding the motion, the court has considered the moving papers, the People’s opposition, the court’s letter dated June 29, 1998, the Grand Jury minutes, and the indictment.
Factual Background
Defendant has been indicted for various crimes involving different acts prohibited by “a” court order of protection. Most of the counts at issue in this motion allege a violation of a single order of protection effective from December 26, 1996 until March 12, 2000. In fact, the Grand Jury minutes reflect the issuance of three separate orders of protection.
Duplicity
Each count of an indictment may only charge one offense (GPL 200.30 [1]). Where an offense is made out by the commis *793 sion of one act, that act must be the only offense alleged in that count of the indictment (People v Keindl, 68 NY2d 410, 417). A count which charges more than one offense is duplicitous (People v Davis, 72 NY2d 32, 38; People v Keindl, supra, at 417-418). Even if a count is not duplicitous on its face, it can be rendered duplicitous by Grand Jury testimony, a bill of particulars, or trial testimony indicating that the charge includes more than one act per count (see, People v Beauchamp, 74 NY2d 639, 640-641; People v Jiminez, 239 AD2d 360; People v Corrado, 161 AD2d 658, 659). The bar on duplicity fiirthers the notice function of the indictment, protects against double jeopardy violations, and insures the reliability of unanimous verdicts (People v Keindl, supra, 68 NY2d, at 418).
A crime which by its character may be committed by multiple acts is considered a continuous crime. A count alleging a continuous crime may charge multiple acts spanning a period of time without violating the statutory or constitutional bar against duplicity (People v First Meridian Planning Corp., 86 NY2d 608, 615-616; People v Shack, 86 NY2d 529, 540). In determining whether a crime is a continuing offense the court examines the language of the penal statute and the legislative intent (People v Shack, supra, 86 NY2d, at 541).
Determining whether or not a crime is continuous “is not an easy task” (People v Brown, 159 Misc 2d 11, 15-16). Holding that a crime is continuous is sometimes to a defendant’s advantage and is sometimes to a defendant’s disadvantage (supra, at 15).
Counts 8 and 9 — Menacing
Count 9 charges defendant with the crime of menacing in the third degree.
Penal Law § 120.15 reads as follows: “A person is guilty of menacing in the third degree when, by physical menace, he or she intentionally places or attempts to place another person in fear of death, imminent serious physical injury or physical injury.”
In deciding the issue of legislative intent the court has compared this statute with Penal Law § 120.14 (2), menacing in the second degree.
The major difference between the two crimes is the phrase “engages in a course of conduct or repeatedly commits acts”. (Penal Law § 120.14 [2].) The inclusion of this phrase in menac *794 ing in the second degree makes this crime a continuous one (People v Saldana, 172 Misc 2d 79, 80-81).[1]
Since menacing in the third degree does not contain words indicating that it is a continuous crime, and the Legislature has created the continuous crime of menacing in the second degree, the court finds that menacing in the third degree is a noncontinuous crime.
Count 9 is duplicitous.
Count 8 charges criminal contempt in the first degree under Penal Law § 215.51 (b) (vi). The elements of that Penal Law section are identical to the elements of menacing in the third degree, except that an order of protection must also have been violated. Since the language in Penal Law § 215.51 (b) (vi) and § 120.15 is virtually identical, the court is obligated to interpret the two sections in the same manner (People v Bolden, 81 NY2d 146, 151). Menacing in the third degree not being a continuous crime, criminal contempt in the first degree under Penal Law § 215.51 (b) (vi) is not a continuous crime.
Count 8 is duplicitous.
The motion to dismiss counts 8 and 9 is granted. Those counts are dismissed.
Before analyzing the particular criminal contempt counts involved in this motion, a general understanding of criminal contempt is necessary. Also necessary is an understanding of the legislative intent in enacting chapter 353 of the Laws of 1996.
Legislative Intent — Penal Law § 215.51 (b)
In contrast to the long history of Penal Law contempt (Penal Law § 215.50), section 215.51 of the Penal Law is a recent enactment which focuses solely on orders of protection. This statute was part of a series of statutes passed in order to prevent domestic violence.
Therefore, in determining the legislative intent regarding Penal Law § 215.51 (b), this court has examined the explicit legislative findings in chapter 222 of the Laws of 1994 (Family Protection and Domestic Violence Intervention Act of 1994) as *795 well as the Legislature’s and Governor’s memoranda in support of or approving of chapter 353 of the Laws of 1996, enacting the current Penal Law § 215.51 (b).
In the 1994 findings the Legislature stated (L 1994, ch 222, §D:
“We also know that this violence results in tremendous costs to our social services, legal, medical and criminal justice systems, as they are all confronted with its tragic aftermath.
“Domestic violence affects people from every race, religion, ethnic, educational and socio-economic group. It is the single major cause of injury to women. More women are hurt from being beaten than are injured in auto accidents, muggings and rapes combined.
“The corrosive effect of domestic violence is far reaching. The batterer’s violence injures children both directly and indirectly * * *
“The legislature further finds and declares that domestic violence is criminal conduct occurring between members of the same family or household which warrants stronger intervention than is presently authorized under New York’s laws. The integrity of New York’s families from its youngest to its oldest members is undermined by a permissive or casual attitude towards violence between household members. The legislature further finds and declares that in circumstances where domestic violence continues in violation of lawful court orders, action under the criminal law must remain in place as a necessary and available option.”
The legislative memorandum in support of chapter 353 of the Laws of 1996 reads (Mem of Senate, 1996 McKinney’s Session Laws of NY, at 2309-2310):
“Judicial orders of protection are issued chiefly to help protect victims of domestic violence from additional acts of abuse. Yet, they are violated all too frequently; sometimes with lethal — all but invariably with serious — consequences for those the orders are supposed to protect.
“One significant reason for the alarming frequency with which orders of protection are violated is that felony charges of criminal contempt of court can be brought only in unduly narrow circumstances * * * prosecutors must be able to bring felony charges for violations of orders of protection as soon as defendants commit criminal actions that jeopardize the safety of domestic violence victims * * *
“This egregious weakness in existing law is all the more indefensible when it is considered that orders of protection are *796 commonly violated by acts constituting independent crimes, such as menacing in the second degree, menacing in the third degree or aggravated harassment in the second degree, both of which are class A misdemeanors. Clearly, it makes no sense to punish as a class A misdemeanor criminal acts that entail the commission of two class A misdemeanors: criminal contempt and either menacing in the second degree or aggravated harassment in the second degree.
“The remedy proposed by the bill is simple and straightforward: whenever defendants violate orders of protection by committing acts constituting independent crimes, such as menacing in the second degree, menacing in the third degree or aggravated harassment in the second degree, they can be prosecuted for committing the class E felony of criminal contempt in the second [s¿c][2] degree. Thus, a felony offense will be committed when a defendant violates an order of protection and in doing so brandishes a weapon at, threatens, stalks, menaces or harasses a person for whose protection the order was issued. Those who violate orders of protection and intentionally or recklessly cause physical injury or serious physical injury to their victims will be prosecuted for committing a class D felony.”
The Governor in approving chapter 353 of the Laws of 1996 used virtually identical language to the above-quoted words and in many sections uses the identical words (Governor’s Mem approving L 1996, ch 353, 1996 McKinney’s Session Laws of NY, at 1891-1892).
It is clear from these documents that when the Legislature enacted Penal Law § 215.51 (b), criminal contempt in the first degree, the Legislature was seeking not only to vindicate the right of the individual, the court, or society in the administration of justice, but also to stop a very real and present danger of domestic violence through acts committed between persons who are connected to each other either by blood, by marriage, acquaintance, or who reside in the same household. The major purpose was to prevent the great cost of domestic violence to society as a whole, and not only to the victim. With this legislative intent in mind, the court will view defendant’s and the prosecutor’s arguments about whether the crimes enumerated in Penal Law § 215.51 (b) are continuous.
*797 Counts Containing Allegations of Violations of Multiple Orders of Protection
With the exception of counts 24 and 25, the multiple acts alleged in the remaining counts span a time period covering several orders of protection, each issued at a different time and each covering different time periods, none of which overlap. Some of the counts cover orders of protection issued by different Judges. The orders were all made during the pendency of a single criminal action, and relate to the same criminal action.
As stated earlier (see, section headed “Duplicity”), in determining whether it is appropriate to allege the violation of multiple court orders in a single count, the court examines the language of the statute and the legislative intent (see, People v Shack, supra, 86 NY2d, at 541).
An examination of the actual words of Penal Law § 215.51 (b) shows that the statute uses the word “order” in the singular and not in the plural. As stated in People v Buckley (75 NY2d 843, 846): “The General Construction Law provides, however, that ‘[w]ords in the singular number include the plural, and in the plural number include the singular’ (General Construction Law § 35). This rule of construction ‘is applicable to every statute unless its general object, or the context of the language construed, or other provisions of law indicate that a different meaning or application was intended’ (General Construction Law § 110).” Thus, the word “order” includes the plural “orders” (see, supra). The fact that the statute uses the singular word “order” in Penal Law § 215.51 (b) does not necessarily mean that the Legislature intended that the crime must be committed during the pendency of a single order of protection.
An examination of the legislative intent is appropriate. By creating a new contempt crime, the Legislature indicated that the interest of society in the proper administration of justice was a major concern. More importantly, the Legislature’s and the Governor’s statements indicate that the Legislature was concerned with the effects of domestic violence on society as a whole rather than the disrespect shown to an individual Judge/ • Justice whose order was disobeyed. The Legislature’s findings indicated that the cost of domestic violence to society goes far beyond the individual victim and affects children who may not be the subject of the actual violence, and “results in tremendous costs to our social services, legal, medical and criminal justice systems, as they are all confronted with its tragic aftermath” (L 1994, ch 222, § 1).
*798 Given the legislative pronouncements, it is doubtful that the government intended to limit crimes of domestic violence to a single order of protection per count. Domestic violence can span a long period of time, and involve the issuance of several orders of protection during the pendency of a single criminal action. ■
The court finds that the Legislature intended Penal Law § 215.51 (b) to cover multiple orders of protection issued dining a single criminal action, and that the violation of multiple orders may be charged in a single count as a “continuous crime”.
Thus, the charging of a violation of several orders of protection in the remaining counts does not create a violation of either the statutory or constitutional bar against duplicity.
The holding herein should not be interpreted to mean that there would be a multiplicity problem if an indictment alleges in each count the violation of a single order of protection in cases where multiple orders of protection were issued during the pendency of the criminal action. The Legislature granted the People the right to allege a violation of each order of protection separately or in a single count (see, e.g., People v Cox, 286 NY 137 [aggregating separate petit larcenies into one count of grand larceny]).
Also, nothing said in this section shall be deemed applicable to count 3 of the indictment which alleges a violation of Penal Law § 215.50. That section was enacted prior to any domestic violence statutes and has its own legislative intent.
Count 1 — Penal Law § 215.51 (b) (iii)
Count 1 of the indictment alleges multiple acts violating three orders of protection in violation of Penal Law § 215.51 (b) (iii). For the reasons previously stated, the fact that three distinct orders of protection were violated does not create a duplicity problem.
Addressing the fact that multiple acts are alleged in this count, the court will examine the statutory language and legislative intent. The relevant portion of Penal Law § 215.51 (b) (iii) after requiring a violation of an order of protection reads as follows: “(iii) intentionally places or attempts to place a person for whose protection such order was issued in reasonable fear of physical injury, serious physical injury or death when he or she communicates or causes a communication to be initiated with such person by mechanical or electronic means or otherwise, anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication”.
*799 The phrase “a communication” indicates a single communication. However, as previously stated, words in the singular include the plural (People v Buckley, supra, 75 NY2d, at 846). Thus, the phrase in the singular form must be considered in the context of the statute and legislative intent.
Another phrase used in Penal Law § 215.51 (b) (iii) is “reasonable fear of physical injury”. A person may be placed in “reasonable fear” through a single act of communication or by multiple acts of communication. While a single act may not place a person in fear, repeated acts may. Thus, the phrase “reasonable fear” implies either a single act or multiple acts.
Given the Legislature’s concern with domestic violence, the court holds that it was the Legislature’s intent to prohibit “reasonable fear” caused by a single communication or by multiple communications. This subdivision may be violated by a single communication or multiple communications, and can be charged as either a “continuous crime” or as a noncontinuous crime (see, People v Brown, supra, 159 Misc 2d, at 16 [describing three different categories of crimes]).
Based on the facts in this case, the court finds that it was proper to allege a “continuous crime” in count 1. The count is not duplicitous.
The motion to dismiss count 1 is denied.
Count 2 — Penal Law § 215.51 (b) (iv)
Count 2 of the indictment alleges multiple acts violating three orders of protection in violation of Penal Law § 215.51 (b) (iv). For the reasons previously stated, the fact that three distinct orders of protection were violated does not create a duplicity problem.
Addressing the fact that multiple acts are alleged in this count, the court will examine the statutory language and legislative intent. The relevant portion of Penal Law § 215.51 (b) (iv) after requiring a violation of an order of protection reads as follows: “(iv) with intent to harass, annoy, threaten or alarm a person for whose protection such order was issued, repeatedly makes telephone calls to such person, whether or not a conversation ensues, with no purpose of legitimate communication”.
In People v Shack (supra, 86 NY2d, at 541) the Court stated, “The use of the terms ‘harass’ and ‘annoy’ are easily susceptible of describing multiple acts occurring over a period of time.” The Court held that these words may create a continuous crime.
*800 The motion to dismiss count 2 is denied.
Counts 6 and 24 — Penal Law § 215.51 (b) (i)
Count 6 of the indictment alleges multiple acts violating three orders of protection in violation of Penal Law § 215.51 (b) (i). For the reasons previously stated, the fact that three distinct orders of protection were violated does not create a duplicity problem.
Count 24 alleges multiple acts violating a single order of protection in violation of Penal Law § 215.51 (b) (i).
Addressing the fact that multiple acts are alleged in these counts, the court will examine the statutory language and legislative intent. The relevant portion of Penal Law § 215.51 (b) (i) after requiring a violation of an order of protection reads as follows: “(i) intentionally places or attempts to place a person for whose protection such order was issued in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm or by means of a threat or threats”.
The phrase “threat or threats” indicates that either a single threat or multiple threats would violate the statute. The statutory language contemplates the possibility that the crime can be committed by a single act or multiple acts and is possibly a continuous crime.
However, examination of the facts in this case reveals a statutory construction issue. There is a total absence of any allegations or facts presented to the Grand Jury that a specific statute-enumerated instrument was used to place the victim in “reasonable fear”. Thus, this court must determine whether the phrase “by means of threat or threats” refers to the previously enumerated instruments or is an independent phrase, so that the fear may be instilled by any type of threat regardless of how the threat is made. The wording of the indictment fails to mention any of the specifically enumerated weapons.
In resolving this issue, the court has considered various rules of statutory construction. The first rule considered is the rule of “ejusdem generis”. This rule means that general language contained in a statute is limited by the specific phrases preceding it (McKinney’s Cons Laws of NY, Book 1, Statutes § 239 [b]; People v Shapiro, 50 NY2d 747, 764; People v Illardo, 48 NY2d 408, 416; People v Martell, 16 NY2d 245, 247). Under this rule of construction, the phrase “threat or threats” would modify the enumerated instruments and require that the threats be done by the enumerated instruments.
*801 The second rule of construction is that a court, in interpreting a statute, should not create a situation where words would be rendered useless or superfluous (McKinney’s Cons Laws of NY, Book 1, Statutes § 231; People v Tran, 80 NY2d 170, 176; People v Gallina, 66 NY2d 52, 56), Each word of a statute is to be interpreted to serve a useful purpose (supra; People v Gaskins, 171 AD2d 272, 279).
In this case, if the court uses only the principle of ejusdem generis, the words “by means of’ which precede the phrase “threat or threats” become superfluous or useless because that phrase is used earlier to describe the enumerated instruments.
If the court interprets the phrase “by means of threat or threats” independently of the enumerated weapons, and holds that any threat, no matter what its source, is a violation of this statute, then the entire enumeration of instruments is rendered superfluous or useless. This is so because the court is interpreting the prohibited activity as any threat, whether by the enumerated instrument or not.
Ultimately, the most important rule of construction is that a statute should be interpreted in accordance with the Legislature’s and the Governor’s intent in enacting or approving the statute (People v Manini, 79 NY2d 561, 570; People v Ryan, 274 NY 149, 152).
In both the legislative memorandum and the Governor’s Memorandum to chapter 353 of the Laws of 1996 (see, part of this decision headed “Legislative Intent”, supra) it is stated: “Thus, a felony offense will be committed when a defendant violates an order of protection and in doing so brandishes a weapon at, threatens * * * or harasses a person for whose protection the order was issued.” (Mem of Senate, 1996 McKinney’s Session Laws of NY, at 2310; Governor’s Mem approving L 1996, ch 353, 1996 McKinney’s Session Laws of NY, at 1892.) The phrase “brandishes a weapon at” is a separate and distinct phrase from the word “threatens” and, therefore, the word “threats” in Penal Law § 215.51 (b) (i) is a threat from any source, whether by weapon or not.
This legislative intent is also indicated by the use of the word “or” at the end of the list of proposed prohibited activities in the Legislature’s and Governor’s memoranda. The legislative statement must be read to say that there will be a violation of law if a person either “brandishes a weapon at” or “threatens” a person for whose protection the order of protection was issued.
The court realizes that no matter how the statute is interpreted there will be superfluous or useless words. In addi *802 tion, regardless of the court’s conclusion, some of the words will be meaningless. Indeed, the statute contains unnecessary verbiage, such as the phrase “fear of physical injury, serious physical injury or death”. A person who places a victim in fear of “serious physical injury” or “death” by definition places such person in fear of “physical injury”. Thus, the words “serious physical injury or death” are superfluous and useless.
In sum, given the express language of the memoranda the court finds that “threat or threats” refers to threats from any source even if not by the enumerated weapons.
The motion to dismiss counts 6 and 24 is denied.
Counts 7 and 25 — Penal Law § 215.51 (b) (v)
Count 7 of the indictment alleges multiple acts violating three orders of protection in violation of Penal Law § 215.51 (b) (v). For the reasons previously stated, the fact that three distinct orders of protection were violated does not create a duplicity problem.
Count 25 charges defendants with multiple acts committed between June 1 and June 30, 1997. These acts, it is alleged, constitute a violation of Penal Law § 215.51 (b) (v).
The aggravating factor of Penal Law § 215.51 (b) (v) is “harass [or] annoy”.
For the reasons stated about count 2 these counts are not duplicitous.
The motion to dismiss counts 7 and 25 is denied.
In sum, counts 3, 8 and 9 are dismissed. As to all other counts, the motion is denied.

. There are some minor differences between the two statutes that do not affect the court’s analysis. Menacing in the third degree requires “physical menace” which second degree menacing does not. Menacing in the second degree includes fear of “death”, while third degree menacing does not. Of course, when one fears physical injury, that element includes “death”, the ultimate form of “physical injury”.

. The E felony is not criminal contempt in the second degree, but criminal contempt in the first degree.