OPINION OF THE COURT
Peter C. Buckley, J.
The defendant is charged with 56 criminal counts in connec *810 tion with an incident alleged to have occurred on Valentine’s Day at the Southside High School as follows:
• Seventeen counts of criminal possession of a dangerous weapon in the first degree (Penal Law § 265.04), alleging that the defendant possessed 17 different devices containing an explosive substance, with the intent to use the same unlawfully against the person or property of another.
• Thirty-four counts of criminal use of a firearm in the first degree (Penal Law § 265.09 [1] [a]), alleging possession of the 17 bombs with a loaded Ruger .22 caliber pistol (one count for each device with the Ruger) and also one count for each explosive substance possessed with a loaded Remington 12 gauge shotgun.
• Three counts of criminal possession of a weapon in the third degree (Penal Law § 265.02 [2]), alleging possession of an incendiary (propane bottle) bomb (located at the school) and two explosive bombs (located at his residence).
• One count of criminal possession of a weapon in the second degree (Penal Law § 265.03 [2]), alleging possession of the Ruger pistol with intent to use the same unlawfully against the person or property of another.
© One count of criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [3]), alleging possession without permission of the loaded shotgun in a building used for educational purposes.
Mr. Getman is alleged to have possessed the Ruger pistol and three of the explosive devices on his person and 14 additional explosive devices in a duffel bag, which he carried to school.
The defendant has filed a motion arguing that many of the counts of the indictment are defective because they are multiplicitous, and that they should thus be dismissed.
Briefly, the defendant argues that he possessed only one explosive substance and may be charged with only one count under Penal Law § 265.04. Further, the defendant argues that since there is only one legitimate charge of criminal possession of a dangerous weapon in the first degree, only two charges of *811 criminal use of a firearm in the first degree may be supported. The People argue that each of the devices had a separate identity, that each was individually capable of exploding and that each properly supported separate counts of the (Penal Law § 265.04) crime.
Since the defendant has challenged the indictment and the indictment is based upon the evidence before the Grand Jury, a review of and reference to that evidence is necessary to deciding this motion. (See, People v Vogt, 172 AD2d 864 [2d Dept 1991]; People v Sulkey, 195 AD2d 1026 [4th Dept 1993], lv denied 82 NY2d 759 [1993]; People v Corrado, 161 AD2d 658 [2d Dept 1990]; People v Gellineau, 178 Misc 2d 790 [Sup Ct, Kings County 1998].)
What is Multiplicity/Duplicity?
Section 200.20 (1) of the CPL states, “[a]n indictment must charge at least one crime and may, in addition, charge in separate counts one or more other offenses” (emphasis added).
An indictment is multiplicitous if two separate counts charge what amounts to one single crime. (People v Senisi, 196 AD2d 376, 382 [2d Dept 1994], lv denied sub nom. People v Killane, 84 NY2d 828 [1994].) An indictment is not multiplicitous if each count requires proof of an additional fact that the other does not require. (People v Kindlon, 217 AD2d 793, 795 [3d Dept 1995], lv denied 86 NY2d 844 [1995]; see, Blockburger v United States, 284 US 299, 304.)
“The vice of multiplicity is that it may lead to multiple sentences for the same offense (United States v Reed, 639 F2d 896, 904). In addition ‘the prolix pleading may have some psychological effect upon a jury by suggesting to it that defendant has committed not one but several crimes3 (United States v Mamber, 127 F Supp 925, 927).” (People v Horne, 121 Misc 2d 389, 393 [Sup Ct, Kings County 1983].) The Horne court noted that in New York there was not an actual danger of multiple sentences for the same offense since Penal Law § 70.25 requires the imposition of concurrent time for convictions arising out of the same transaction.
In order to fully appreciate the issue of multiplicity, one must also consider the opposing error of duplicity.
“Pursuant to CPL 200.30, an indictment is duplicitous when one count of the indictment charges more than one offense.33 (People v Kindlon, supra at 795.)
“Duplicitous counts are prohibited to prevent double jeopardy, to ensure a defendant’s due process right to notice, and *812 to ensure the unanimity of a jury’s verdict.” (People v Fernandez, 173 Misc 2d 938, 944 [Sup Ct, Kings County 1997].)
“The prohibition against duplicity in an indictment insures the reliability of the unanimous verdict, in that if two or more offenses are alleged in one count, individual jurors might vote to convict a defendant of that count on the basis of different offenses, and the defendant would thus stand convicted under the count even though the jury may never have reached a unanimous verdict as to any one of the offenses.” (32 Carmody-Wait 2d, NY Prac § 172:991.)
While the term “multiplicity” may be clear in the abstract, its application to a specific set of facts may prove difficult. The Horne court aptly, but with some amount of understatement, put it this way, “[d]etermining whether two counts are multiplicitous can be a subtle and difficult question.” (Horne, supra at 393.)
Need to Determine Statutory Meaning:
The Court must examine the statutes in question in order to decide whether the counts are multiplicitous. ‘Whether counts are multiplicitous or duplicitous is largely a question of statutory construction.” (People v Fernandez, supra at 945.) Courts look to the proper “unit of prosecution” and “essence of the statute” in determining the issue. (People v Miller, 138 Misc 2d 639, 643 [Sup Ct, NY County 1988].)
There appears to be no court in the state which has ruled on the particular issue concerning the proper charging of criminal possession of a dangerous weapon in the first degree. The issue of multiplicity regarding this charge appears to be a case of first impression in this state.
The Charged Crimes at Issue:
“A person is guilty of criminal possession of a dangerous weapon in the first degree when he possesses any explosive substance with intent to use the same unlawfully against the person or property of another.” (Penal Law § 265.04.)
“A person is guilty of criminal use of a firearm in the first degree when he commits any class B violent felony offense * * * and he * * * possesses a deadly weapon, if the weapon is a loaded weapon from which a shot, readily capable of producing death or other serious injury may be discharged.” (Penal Law § 265.09 [1] [a].)
*813 The issues regarding criminal use of a firearm in the first degree are dependent upon those concerning the required underlying class B felony, to wit, Penal Law § 265.04.
“Explosive Substance”:
The term explosive substance is not defined in the Penal Law. Labor Law § 451 defines the term “explosives” as follows:
“ ‘Explosives’ means gunpowder, powders used for blasting, high explosives, blasting materials, detonating fuses, detonators and other detonating agents, smokeless powder and any chemical compound or any mechanical mixture containing any oxidizing and combustible units, or other ingredients in such proportions, quantities, or packing that ignition by fire, friction, concussion, percussion or detonation of any part thereof may and is intended to cause an explosion, but shall not include gasoline, kerosene, naphtha, terpentine, benzine, acetone, ethyl ether, benzol and all quantities of black powder not exceeding five pounds for use in firing of antique firearms or artifacts or replicas thereof. Fixed ammunition and primers for small arms, fire-crackers, safety fuses and matches shall not be deemed to be explosives when, as may be determined by the board in its rules, the individual units contain any of the above-mentioned articles or substances in such limited quantity, of such nature and so packed that it is impossible to produce an explosion of such units to the injury of life, limb or property.”
The First Department in the case of People v McCrawford (47 AD2d 318, 321 [1975]) looked at the legislative history of the statutes as follows and applied the Labor Law definition to the penal statute:
“The Practice Commentary by Arnold Hechtman to section 265.04 of the Penal Law (McKinney’s Cons Laws of NY, Cum Pocket Part 1974-1975, pp 111-112) indicates that section 464 of the Labor Lav/ enacted in 1970 provided for a penalty (class D felony) for any unauthorized possession of an explosive as defined in section 451 of the Labor Law. Enacted at the same time was the provision for amendment of the Penal Law increasing the penalty from a class D to a class B felony with reference to possessing ‘any explosive substance’ with criminal intent. The legislation was prompted by a *814 series of terror bombings in early 1970, which pointed up the need for closer supervision of explosives in general and centralized licensing with the State Industrial Commission. The effect, therefore, is to incorporate the definition of an explosive from the Labor Law.”
3 CJI(NY) PL 265.04 in the instruction regarding section 265.04 defines “explosive substance,” as “a substance which is capable of exploding and causing substantial harm to a person or substantial damage to property.” The charge continues, “[a]n explosive substance is capable of being exploded when, by conduct of some person or by virtue of lapse of time, such substance is capable of being exploded and causing substantial harm to a person or property.”
The Third Department in the recent case of People v Ward (282 AD2d 819, 821) stated, “the term ‘explosive substance’ retains its everyday common sense meaning since it is undefined in the Penal Law.”
Based on the above interpretations, this Court finds that the essence of the term “explosive substance” is something which is capable of exploding and causing death or injury to person or property. The People allege that each of the devices possessed by the defendant were individually capable of exploding and causing such injury. Law enforcement in fact detonated all but one of the bombs and videotaped the resulting explosions. The final device was taken apart for analysis. If it explodes, common sense tells us that it must have contained an explosive substance.
The McCrawford court determined that a Molotov cocktail was not an explosive substance but was an incendiary device, since it is “designed to start a fire without the instantaneous lethal percussion aspects of an explosive.” (McCrawford, supra at 321.) The testimony before the instant Grand Jury was that these devices did explode with what amounted to the required instantaneous lethal percussive aspects of an explosion.
The statute looks at a twofold result — the explosion and the capability of causing the ensuing harm. The forensic chemist testified that the explosive substance was a “low explosive.” “Low explosives generally burn by deflagration as opposed to detonation unless confined. You would have to put this mixture inside an enclosed container such as a metal pipe or PVC pipe, something of that nature to contain the pressure and cause a rupture which would send fragmentation or shrapnel flying in all directions” the chemist testified.
*815 The “instantaneous lethal percussion aspects of an explosive” spoken of in McCrawford (supra), and the potential for injurious results required by the Criminal Jury Instructions and the Labor Law would not have been present had the defendant not contained the explosive substance. The device is therefore made relevant to the charge. Each individual device was capable of exploding and causing injury, while the substance by itself did not possess such attributes.
It is also interesting to note that the Labor Law does mention the concept of “packing.” While the packing is not important in its own right, according to the words of the statute, it does become important when it allows the substance to explode with the potential resultant injuries.
This Court submits that the term “explosive substance” is a generic term which is meant to include anything which causes an explosion (excluding certain enumerated materials not involved here) resulting in harm. The most common example of an explosive substance in common everyday understanding is a bomb.
Who was the Statute Intended to Protect?/Statutory Scheme:
The Legislature set up a series of statutes concerning weapons. Simple possession of an explosive or incendiary bomb or bombshell was designated a class D felony (Penal Law § 265.02). Criminal possession of a dangerous weapon in the first degree (Penal Law § 265.04) was elevated to a class B felony. The differentiating factor between the two crimes is that the more serious crime requires the intent to use the same unlawfully against the person or property of another.
Clearly, the Legislature was attempting to discourage and more thoroughly punish even the potential for use of these weapons against persons and property. So grave is the potential for loss in situations involving explosives, that the Legislature made even the possession with intent to use unlawfully against persons or property a class B felony.
The objects intended to be protected in this case were the students, faculty and staff of the Southside High School and the school property itself. Due to the size and the makeup of the 17 items, it could be argued that the number of potential victims was higher based upon an alleged plan of individual detonations involving separately located victims.
It is the manner in which the defendant allegedly contains the substance which made it a dangerous weapon capable of causing the injury, the intent for which is required by the stat *816 ute. Further, each individual device was made to explode by virtue of its packing and each individual device by virtue of its packing was made a danger to those intended to be protected.
Title of the Statute:
The title of the statute is criminal possession of a dangerous weapon in the first degree. The term “weapon” is only used in the body of the statute by way of introduction. However, the titling of the crime by the Legislature shows some intent on their part to criminalize and to prevent the use of the dangerous weapon. Penal Law § 10.00 does not define “dangerous weapon” but does define “deadly weapon” and “dangerous instrument.” Both of the defined terms refer to what might be considered devices. Webster’s New World Dictionary defines “weapon” as “an instrument used to injure or kill.” All refer to tangible items, in accord with commonly understood meanings and not with abstract terms. Further, they look to the complete items and not to the items’ component parts.
Unique Features/Common Threads:
Each of these 17 devices had its own unique identity and features. These were not mass produced devices but were allegedly individually made by the defendant over the course of a month or two. The defendant was allegedly the one who determined to split the “gun powder” into 17 separate devices.
Each explosive device had specific attributes — some were filled with staples, some with pieces of metal, some with fish hooks, some with nails and some with metal balls.
People v Kindlon (supra) instructs us that counts are not multiplicitous when each count requires proof of an additional fact that the other does not require. Arguably, these counts meet that standard. For example, proof of the first count requires that the defendant possessed and intended to use a PVC pipe containing an explosive substance and round metal balls, while proof of the fourth count requires that the defendant possessed and intended to use a closed metal pipe containing an explosive substance with metal nails taped on the outside.
While each device was distinct in features, each has common threads. Each contained an explosive substance and each was individually capable of exploding and causing substantial injury or damage. Each was also allegedly designed, manufactured and possessed by Jeremy Getman on Valentine’s Day 2001.
*817 Other Multi-Count Convictions:
The Court was able to find other instances in New York State where a defendant had been indicted and convicted of multiple counts of the crime of criminal possession of a dangerous weapon in the first degree. In the case of People v Collado (259 AD2d 626 [2d Dept 1999], lv denied 93 NY2d 923 [1999]), the defendant was convicted of four counts of that crime. The court file reflects that the defendant possessed three grenades and one football-sized remote-controlled bomb. A chemist testified that all of the bombs contained TNT. All but one of the bombs also contained flash powder. The remote-controlled bomb contained a higher concentration of TNT over flash powder than those grenades containing both substances. The issue of multiplicity was not discussed in the appellate decision in that case.
The defendant in People v Nuesslein (248 AD2d 560 [2d Dept 1998] [conviction overturned on evidentiary error], lv denied 92 NY2d 858 [1998]) was convicted of three counts of the crime. The record on appeal describes the weapons as improvised explosive devices containing “Pyrodex,” a black flash powder. Two of the bombs had nails on the outside and a third had batteries attached. A detective testified that it was the manner in which the Pyrodex was densely packed which made it capable of causing serious bodily injury and possibly death.
People v Bernacet (108 AD2d 921 [2d Dept 1985], lv denied 65 NY2d 813 [1985]) involved a two-count conviction. The record on appeal indicates that the bombs were pipe bombs made from gun powder and shotgun shells; one with a fuse and the other having an egg timer.
Duplicity Argument:
A serious argument could be mounted that charging all 17 devices within one count would be duplicitous. Three of these devices were found upon his person and 14 were found in Ms duffel bag. If the individual devices are of no import, then there exists the possibility that the defendant might be convicted without there being a unanimous verdict of the jury. For instance, certain jurors could find that the defendant possessed an explosive substance and that he intended to unlawfully use that substance located in the “cricket bombs” in his jacket pockets against the person of another, while other jurors could agree that the defendant possessed an explosive substance but that he intended to unlawfully use the explosive substance contained in the duffel bag against the person of another. The defendant would stand convicted without a factual agreement as to the elements of the crime. The defense argues that this problem could easily be remedied by a special instruction to *818 the jury. This argument by the defense shows the inconsistency of its position. On the one hand, the devices are of no importance whatsoever, while on the other hand a special charge is required so that we are sure that the jurors have reached agreement on the device containing the explosive substance which was intended to be used unlawfully against the person or property of another. The defense cannot have it both ways. Their position ignores the factual realities of the case.
Understandable Jury Charge:
Charging a trial jury as to 56 different counts would be burdensome and overly confusing to the jury. The defense argues that the proper remedy is the dismissal of most of the counts. However, section 300.40 of the CPL provides authority for the court in its discretion to submit to the jury one or more noninclusory concurrent counts. (See also, 35 Carmody-Wait 2d, NY Prac § 172:2916.) After hearing the evidence presented in the case, this Court could select representative counts to charge the jury, without charging all of the counts in the indictment. Since concurrent sentencing is required, the ultimate sentence faced by the defendant would not be affected by such a procedure. The section 300.40 procedure has been sanctioned by appellate courts. (People v Kulakov, 278 AD2d 519 [3d Dept 2000], lv denied 96 NY 785 [2001]; People v Gaul, 63 AD2d 563 [1st Dept 1978]; People v Pozo, 261 AD2d 144 [1st Dept 1999], lv denied 94 NY2d 828 [1999].) Its application seems to be more prudent and a less severe remedy than that proposed by the defense.
Conclusions Regarding Multiplicity:
The legislative history regarding Penal Law § 265.04 is not particularly enlightening. Indeed, it seems unfortunate that the Legislature has utilized the term “explosive substance” without defining the same. They may wish to review this statute in order to correct this apparent oversight.
Evidence was presented before the Grand Jury that each of the 17 devices possessed by the defendant was individually capable of exploding and causing injury to the students, faculty/ staff, or property at Southside High School.
The evidence before the Grand Jury further established, by means sufficient for the purpose, that the defendant made the explosive substance capable of exploding with an instantaneous lethal or injurious percussive effect by the manner in which he packaged the explosive substance. The packaging, while not *819 legally important by itself, thus becomes an issue in this case. The devices were individually capable of exploding and injuring.
Each bomb, with 17 in number, has a separate and distinct identity. Each bomb, if brought to Southside High School by the defendant, was a potential dangerous weapon capable of causing injury to students. The statute is entitled “Criminal possession of a dangerous weapon in the first degree,” with the operative word being “weapon,” and with each bomb in this case allegedly being a dangerous weapon. A bomb, if made of an explosive substance capable of causing an explosion and resultant injuries is, ipso facto, a dangerous weapon.
The defense presents the term “explosive substance” in an abstract light, while the Court believes that the term was intended to be applied in a more commonsense and generic manner.
Further, the defense presents the concept of “unit of prosecution” as being an inflexible measure. The concept cannot be examined in the abstract, and must, we believe, be considered in light of the factual setting in this case. Assuming that the defendant had one initial cache of powder mixture (i.e., explosive substance), the defendant himself allegedly split the substance into units or devices which were in themselves individually capable of exploding and causing injury. In fact without so splitting the substance, the whole may not have been able to produce the legally required result. This defendant allegedly took what might have been one unit of prosecution and made it into 17 operable and injuriously effective units. He allegedly made each device a dangerous weapon, which, coupled with his alleged specific intention, was intended to be prohibited by the statute.
In making the devices each with their own particular features and attributes, the defendant has differentiated them so that the required proof for one count is different from that required for another. (People v Kindlon, supra.)
While the Court does not believe that counts of the indictment are multiplicitous, we do believe that the charging of all of the separately operable devices in one count would be duplicitous.
Since each of the 17 Penal Law § 265.04 counts alleges an individually operable explosive substance, with that substance in fact made operable by the manner of its packaging, each count properly charges an individual crime.
*820 As the crime of criminal use of a firearm in the first degree requires the commission of a class B violent felony offense, while the person possesses a deadly weapon, and since that underlying offense in this case is Penal Law § 265.04, with 17 legitimate separate counts of that underlying crime, one count may be charged regarding the Ruger pistol for each of the 17 devices and one count may be charged regarding the Remington shotgun for each of the 17 separately operable explosive substances.
The proper remedy to assist the Court and jury in dealing with the great number of counts and the difficulty of applying the jury instructions for that number of counts is the sound application of the Court’s discretionary authority pursuant to CPL 300.40.
The Court finds that the 56 counts of the indictment are not multiplicitous and the defendant’s motion to dismiss counts of the indictment on that ground is denied.