06-1422-pr
Willette v. Fischer

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2007

Heard: October 2, 2007                    Decided: October 29, 2007

Docket No. 06-1422-pr

- - - - - - - - - - - - - -
STEVEN WILLETTE,
      Petitioner-Appellee,

           v.

BRIAN FISCHER,
      Respondent-Appellant.
- - - - - - - - - - - - - -

Before: MESKILL, NEWMAN, and SOTOMAYOR, <u>Circuit Judges</u>.

Appeal from the February 28, 2006, judgment of the United States District Court for the Northern District of New York (David N. Hurd, District Judge), reversing, on consideration of a habeas corpus petition, convictions on four counts of an eight-count state court indictment.

Affirmed in part and remanded for entry of a modified judgment that vacates three counts.

> Malancha Chanda, Asst. Atty. General, New York, N.Y. (Eliot Spitzer, N.Y. State Atty. General, Robin A. Forshaw, Deputy Solicitor General, Office of the N.Y. State Attorney

General, New York, N.Y., on the brief), for
Respondent-Appellant.

Livingston L. Hatch, Plattsburgh, N.Y., submit-
ted correspondence for Petitioner-Appellee.

JON O. NEWMAN, <u>Circuit Judge</u>.

This appeal from the grant of a petition for a writ of habeas
corpus primarily concerns a claim of unconstitutional multiple
punishment for the same offense. Respondent-Appellant Brian Fischer,
Commissioner of the New York State Department of Corrections ("the
State"), appeals from the February 28, 2006, judgment of the United
States District Court for the Northern District of New York (David N.
Hurd, District Judge) adopting a recommended ruling by the Magistrate
Judge (Hon. David E. Peebles) to grant partial habeas corpus relief to
the Petitioner-Appellee, Steven Willette. The judgment orders
reversal of Willette's conviction on four counts of an eight count
indictment and dismisses his challenge to the other four counts. We
conclude that punishment for three of the four challenged counts was
unconstitutionally imposed, and therefore affirm in part and remand
for entry of a modified judgment.

Background

<u>Underlying conviction.</u> In 1984, Willette was convicted in New
York state court of two counts of first-degree sexual abuse stemming

-2-

from sexual contact with a four-year-old girl.  See People v. Willette, 109 A.D.2d 112, 113, 490 N.Y.S.2d 290, 291 (App. Div. 1985). That conviction is not challenged on the pending appeal.  Willette was released from custody in September 1995 and placed on parole.  A condition of his parole prohibited contact with any minors.

Challenged conviction. The challenged conviction is for violation of New York's Sex Offender Registration Act ("SORA"), see N.Y. Correct. Law § 168 et seq. (McKinney 1996), which became effective on January 21, 1996.  Willette, as a convicted sex offender on parole at that time, was required to register with law enforcement authorities pursuant to SORA.  SORA divides registrants into three levels depending on the perceived risk of recidivism, with level-three registrants posing the highest risk.  Willette was determined to be a level-three registrant.

Especially pertinent to this appeal are the requirements for reporting a registrant's address and any change of address.  Level-one and level-two registrants must verify their address by mail to the Division of Criminal Justice annually upon the anniversary of their initial registration. See id. § 168-f(2).[1]  However, level-three

_____

[1]Recent amendments to SORA have changed the language, but not the substance, of the registration and notification provisions. See N.Y.

-3-

registrants must personally verify their address with the local law enforcement agency every ninety days. See id. § 168-f(3). In addition, all registrants must register a change of address with the law enforcement agency where last registered within ten days of moving. See id. § 168-f(4). Failure to register or verify as required by SORA is punishable as a class A misdemeanor upon conviction for the first offense; any subsequent offense is punishable as a class D felony. See id. § 168-t. As a level-three registrant, Willette was subject to the ninety-day verification requirement.

Offense conduct, conviction, and appeal. At ninety-day intervals from August 1997 through November 1998, Willette reported to law enforcement authorities that he was living with his father at the address in Redford, N.Y., provided in his initial registration. However, in November 1998, law enforcement authorities learned that Willette had been living in Peru, N.Y. Investigation disclosed that Willette had moved into the home of Julia Turner at her request and was living there, with her two minor children, from July 1997 to September 1998.

Willette was convicted on four counts of filing a false instrument in the first degree in violation of N.Y. Penal Law § 175.35

Correct. Law §§ 168-f(2)-(4), 168-t (McKinney Supp. 2007).

-4-

(McKinney 1999) and four counts of failure to inform law enforcement authorities of his new residence in violation of the change-of-address reporting requirement of SORA, N.Y. Correct. Law § 168-f(4). The four false instrument counts were based on Willette's 90-day filings of forms with the Clinton County Sheriff's Department on or about August 14, 1997, November 14, 1997, February 1998 (date unspecified), and May 19, 1998. These filings listed Willette's father's residence in Redford, within Clinton County. The four SORA counts charging failure to report change of address were alleged to have been committed at the same times as the four false statement counts.

The state court sentenced Willette to six months' imprisonment on the first SORA conviction (Count 2), a class A misdemeanor, and to three consecutive terms of three and a half to seven years on each of the other three SORA counts (Counts 4, 6, and 8), class D felonies.[2]

---

[2]SORA prescribes a class A misdemeanor sentence "upon conviction for the first offense" and a class D felony sentence "upon conviction for a second or subsequent offense." N.Y. Correct. Law § 168-t. Willette has made no claim to the state courts or the District Court that the enhanced penalty for a second or subsequent offense should apply only to an offense committed after conviction for an initial offense, and we express no view on this state law issue.

The Count 2 sentence ran concurrently with the consecutive sentences on Counts 4, 6, and 8. On each of the four false instrument counts (Counts 1, 3, 5, and 7) the court sentenced Willette to consecutive terms of imprisonment of two to four years. The false instrument sentences ran concurrently with the SORA sentences, resulting in a total term of imprisonment of ten and a half to twenty- one years (the consecutive sentences on Counts 4, 6, and 8).

Willette appealed to the Appellate Division, claiming primarily that the convictions were invalid because his risk level was determined without procedural due process protections. He also alleged that Counts 3 through 8 were "cumulative" since the State had alleged that his residence in the Turner home was continuous. Brief of Appellant at 7, People v. Willette, 290 A.D.2d 576, 735 N.Y.S.2d 645 (App. Div. 2002). Although the Appellate Division agreed that Willette's risk level determination was "constitutional[ly] infirm[]," Willette, 290 A.D.2d at 577, 735 N.Y.S.2d at 646 (citing People v. David W., 95 N.Y.2d 130, 137 (2000)), it concluded that the risk level determination was irrelevant to his SORA convictions because he was convicted for failing to inform authorities of his change of address under section 168-f(4), a requirement applicable to all registrants, regardless of risk classification, see id. Turning to the false

-6-

instrument convictions, the Appellate Division held that these convictions were proper, whether or not Willette had a duty to file the instruments. See id. It thus affirmed the convictions on all eight counts. The New York Court of Appeals denied leave to appeal. See People v. Willette, 97 N.Y.2d 763 (2002).

District Court proceedings. Willette filed his habeas petition in the District Court, claiming primarily that his convictions were constitutionally invalid because his risk level determination violated his procedural due process rights. In a recommended ruling adopted by the District Court, the Magistrate Judge rejected Willette's challenge to the false statement convictions, agreeing with the Appellate Division that the false statement offenses did not require the existence of a legal duty to file the false instrument. Thus, it was immaterial that the Petitioner's risk level determination, which obliged him to file his 90-day address reports, might have violated his due process rights. Willette has not cross-appealed to challenge this ruling.

The Magistrate Judge next turned to the SORA change-of-address convictions. Unlike the Appellate Division, the Magistrate Judge was "unable to conclude that petitioner's SORA convictions are readily divorced from his level three determination." According to the

-7-

Magistrate Judge, the Petitioner was "convicted of four times changing his residence without complying with the requirement under section 168-f(4) that he notify officials of any such change within ten days," but the Petitioner "changed his residence twice, at most -- once upon moving in with his girlfriend, and a second time when moving out." Deeming the four change-of-address convictions to have stemmed from Willette's level-three obligation to verify his address every ninety days, the Magistrate Judge concluded, "To allow petitioner's convictions to stand would be to impermissibly inflate a single, or at most two, violations for failure to report changes of address into multiple convictions based upon circumstances which, the New York Court of Appeals has concluded, were the product of a due process violation."

In response, the State contended that the change-of-address violation was a "continuing violation, with each day potentially giving rise to a new charge," thereby supporting four convictions that were not dependent on the level-three classification because all registrants, regardless of classification, were required to report a change of address. However, the Magistrate Judge concluded that convicting the Petitioner four times on a continuing violation theory violated the Double Jeopardy Clause. Apparently overlooking the

-8-

reference in Willette's brief to the Appellate Division that the convictions on Counts 3 through 8 were cumulative, the Judge expressed the view that Willette had not raised a double jeopardy claim in the state courts. To "relieve petitioner of the otherwise harsh results of his failure to exhaust," the Magistrate Judge applied the "actual innocence" exception, see Murray v. Carrier, 477 U.S. 478, 496 (1986), to excuse what he understood to be Willette's procedural default. The Magistrate Judge therefore recommended that the convictions on all four SORA counts be set aside, with leave to retry the Petitioner. The District Judge adopted the recommended ruling and granted the habeas petition insofar as it sought to vacate the four SORA convictions.

## Discussion

Exhaustion of state court remedies. We need not consider whether the Magistrate Judge and, by adoption, the District Judge properly invoked the actual innocence exception to procedural default, because we are satisfied that Willette's brief to the Appellate Division adequately alerted the state court to his claim that multiple punishments for the SORA change-of-address violations were invalid. Exhaustion of state court remedies requires that a habeas petitioner's federal claim must be "fairly presented" to the state courts. See

Picard v. Connor, 404 U.S. 270, 275 (1971); Smith v. Duncan, 411 F.3d 340, 349 (2d Cir. 2005). We have required at least the "substance" of the federal claim to be fairly presented, see Smith, 411 F.3d at 349, and have stated that among the ways to satisfy this requirement are "assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution," Daye v. Attorney General, 696 F.2d 186, 194 (2d Cir. 1982) (in banc). Willette's brief to the Appellate Division stated that "counts 3 through 8 of the indictment were cumulative." Counts 4, 6, and 8 alleged the same change-of-address violations set forth in Count 2, varying only in the use of the same dates for the false statement offenses charged in Counts 3, 5, and 7. The allegation that the three change-of-address counts were "cumulative," assessed against the specifics of the indictment, sufficed to "call to mind," id., the protection against multiple punishment safeguarded by the Double Jeopardy Clause.[3] See Illinois v. Vitale, 447 U.S. 410, 415 (1980) (Double Jeopardy Clause

_____

[3]Willette's counsel also preserved his claim at trial, seeking dismissal of Counts 4, 6, and 8, among others, on the ground that "there can be only one charge as to change of address, because subsequent to July of 1997, the prosecution is alleging [Willette] was continuously . . . resid[ing] [at Turner's home in Peru, N.Y.].

-10-

"protects against multiple punishments for the same offense")
(internal quotation marks omitted); Brown v. Ohio, 432 U.S. 161, 165
(1977) (same); United States v. Josephberg, 459 F.3d 350, 355 (2d Cir.
2006) ("If the jury convicts on more than one multiplicitous count,
the defendant's right not to suffer multiple punishments for the same
offense will be protected by having the court enter judgment on only
one of the multiplicitous counts."). The New York courts are
thoroughly familiar with the vice of multiplicitous counts. See, e.g.,
People v. Getman, 188 Misc. 2d 809, 812, 729 N.Y.S.2d 858, 860
(Chemung County Ct. 2001); People v. Miller, 138 Misc. 2d 639, 643,
524 N.Y.S.2d 622, 625 (Sup. Ct. 1988).

Multiple punishments. Willette's multiple punishment claim does
not present the more frequently arising issue of whether two different
statutes may punish the same conduct, see Blockburger v. United
States, 284 U.S. 299, 303-04 (1932); Sharpton v. Turner, 964 F.2d
1284, 1286-88 (2d Cir. 1287), but the less frequently recurring issue
of whether multiple punishments may be imposed for more than one
violation of a single statute, see United States v. Universal C.I.T.
Credit Corp., 344 U.S. 218, 224-26 (1952); Bell v. United States, 349
U.S. 81, 81-84 (1955). This latter issue requires determination of
the "allowable unit of prosecution," Universal C.I.T., 344 U.S. at

-11-

221, an inquiry that turns on the statutory text and the intent of the legislature, see Sanabria v. United States, 437 U.S. 54, 69-70 (1978); Universal C.I.T., 344 U.S. at 221-24, with "ambiguity . . . resolved in favor of lenity," see Bell, 349 U.S. at 83.

Counts 2, 4, 6, and 8 each charged violations of section 168-f(4), which requires every sex offender, regardless of risk-level classification, to register with the local law enforcement agency within ten days after "any change of address."  As noted above, the dates of the four alleged change-of-address counts were the same as the dates of the four false statement counts.  The State's evidence permitted the jury to find that Willette had changed his address when he moved from his father's home in Redford, N.Y., to his girlfriend's home in Peru, N.Y.  This change of address occurred only once, not four times.[4]

At argument in this Court, the State suggested that Willette's conduct could be punished at least four times under section 168-f(4)

---

[4]Perhaps Willette could have been charged with a second change-of-address violation when he failed to report that he had moved back to his father's home in Redford, but the indictment did not charge that offense, and the trial court confined the jury's consideration of the change-of-address counts to the change from the father's home.

-12-

on the theory that the unit of prosecution for a change-of-address violation is each day that a sex offender fails to report a new address. We see nothing in the text of the statute to support such an interpretation, nor have we located any New York case law interpreting any similar statute to render each day of non-compliance with a reporting requirement a punishable unit of prosecution. Since Willette lived with his girlfriend for at least fourteen months from July 1997 to September 1998, the State's theory of a daily offense would expose him to consecutive terms of nearly 3,000 years. We are confident that the New York courts would require clear evidence of legislative intent before even considering such an interpretation.

The clearest indication that the legislature did not intend section 168-f(4) to prescribe daily offenses is the preceding provision of section 168-f(3). This provision requires a level-three registrant, like Willette, to personally verify his address with the local law enforcement agency every 90 days. That 90-day requirement undermines any contention that section 168-f(4) creates a daily offense for each day of a single unreported change of address. To obtain four SORA convictions for the four dates in the indictment, which occurred at 90-day intervals, the State simply could have charged Willette under section 168-f(3).

Remedy. The District Court's judgment reverses Willette's convictions on all four of the section 168-f(4) counts. However, only the convictions on Counts 4, 6, and 8 resulted in cumulative punishments for the same offense in violation of the Double Jeopardy Clause. The conviction on Count 2, the first change-of-address count, is entirely valid.[5] The judgment must therefore be modified to vacate the sentences only on Counts 4, 6, and 8, leaving in place the six-month sentence on Count 2, which runs concurrently with the aggregate eight-to-sixteen-year sentence on Counts 1, 3, 5, and 7.[6]

---

[5]Count 2 charged an offense occurring on August 14, 1997, which was some time after the end of the ten-day reporting interval, but we see no reason, constitutional or otherwise, why the State may not allege one change-of-address violation anytime after the ten-day reporting interval, subject only to the applicable statute of limitations.

[6]Although a grant of a writ of habeas corpus is normally conditional upon a state's failure to take appropriate corrective action, especially where a trial error of constitutional dimension requires a retrial, a district court, considering a petition for a writ of habeas corpus, is authorized to "dispose of the matter as law and justice require," 28 U.S.C. § 2243, including "invalidat[ing] the

-14-

## Conclusion

Accordingly, the case is remanded with directions to enter a modified judgment vacating the sentences on Counts 4, 6, and 8.

---

challenged sentence even though the prisoner remains in custody to serve" other sentences, see Wilkinson v. Dotson, 544 U.S. 74, 85 (2005) (Scalia, J., with whom Thomas, J., joins, concurring).

-15-