OPINION OF THE COURT
Michael Gerstein, J.
This is a case of first impression involving the constitutional prohibition against double jeopardy. The parties have not cited any case, nor has our research uncovered any, addressing the precise issue presented, i.e., whether a convicted sex offender, registered as such in New York, who moves out of state and is convicted of failing to register under the laws of his new residence, may subsequently be prosecuted in New York for failure to register his change of address and failure to register on the anniversary of initial registration in New York, the state from which he moved.[1]
Defendant moves to dismiss a complaint charging him with violating Correction Law §§ 168-t and 168-f (4), failure to register as a sex offender within 10 days after any change of address — first offense, and two counts of failure to register or verify on each anniversary of initial registration, in violation of Correction Law §§ 168-t and 168-f (2). The criminal charges stem from allegations that defendant, a level two sex offender in New York, left his home in New York and moved to Connecticut without notifying the New York authorities.
Defendant moves to dismiss pursuant to CPL 170.30 (1) (c), arguing that the prosecution is barred by reason of a previous prosecution, as defined by CPL 40.20, for failing to register in Connecticut as a sex offender, as required by a Connecticut statute. Defendant argues that further prosecution would violate the Double Jeopardy Clause contained in the Fifth Amendment to the United States Constitution and the companion provision contained in article I (§ 6) of the New York State Constitution.
We find none of these arguments persuasive and deny the motion.
*354 Factual and Legal Background
On July 1, 1985, defendant was convicted of rape in the first degree and sodomy in the first degree under New York law. On November 15, 1996, defendant registered pursuant to New York’s Sex Offender Registration Act (SORA) as a level two sex offender, with mandatory lifetime registration. It is alleged in this prosecution that in 2005, defendant moved to Connecticut, failed to register within 10 days after his change of address, and subsequently failed to register on the 2006 and 2007 anniversaries of his initial registration in New York. Annual registration forms sent to defendant’s last reported address at the end of 2005, on November 15, 2006 (returned with no forwarding address) and in 2007 were not returned by defendant.
On December 27, 2007, defendant was charged with failure to register as a sex offender in violation of Connecticut General Statutes § 54-253, which, in pertinent part, requires registration of all convicted sex offenders residing in Connecticut, whether convicted in that state or elsewhere. On January 6, 2008, defendant was arraigned in New York on the current charges. On May 5, 2008, defendant pleaded guilty to violating Connecticut General Statutes § 54-253. He was subsequently sentenced to a three-year suspended sentence and a conditional discharge and was released from custody in Connecticut. On August 13, 2008, defendant voluntarily returned to New York for the continuation of his case here.
Defendant’s Motion to Dismiss the Complaint is Denied
Pursuant to New York’s SORA (see Correction Law § 168 et seq.), defendant is required to register with appropriate governmental authorities.[2] Especially pertinent to our case are the requirements for reporting a registrant’s address and any change of address. Level one and level two registrants must verify their address by mail to the New York State Division of Criminal Justice Services (DCJS) annually upon the anniversary of their initial registration. (See Correction Law § 168-f [2].)[3] In addition, all registrants must register a change of ad *355 dress with DCJS within 10 days of moving. {See Correction Law § 168-f [4].)
Here, defendant is charged, under New York’s SORA, with failure to register or to verify on each anniversary of initial registration — first offense, and failure to register within 10 days after any change of address — first offense, for conduct occurring on or about December 4, 2006, and with failure to register or to verify on each anniversary of initial registration — second offense, for conduct occurring on or about December 4, 2007.
Under the Connecticut statute to which defendant pleaded guilty (Conn Gen Stat § 54-253), any person who has been convicted of a sex offense and resides in Connecticut on and after October 1, 1998 must register with the Commissioner of Public Safety without undue delay. Thus, pursuant to the statutory scheme of the two states, defendant was required to register annually in New York, the state where he was convicted, and in Connecticut, the state to which he moved.
Defendant argues that while the New York charges involve distinct “offenses,” all of these offenses are part of the same “criminal transaction” as defined by CPL 40.10 (2). (Defendant’s mem at 4.) Defendant contends that because defendant had a single purpose and objective underlying all the offenses, i.e., defendant’s desire to move out of New York and avoid compliance with the sex offender registration laws, and there was no temporal break or change of circumstances separating the offenses, defendant’s conduct constitutes a single criminal transaction — “one continuous failure to register in any jurisdiction.” {Id.)
The People oppose, arguing that the current prosecution does not violate the Double Jeopardy Clause and its companion provision contained within article I (§ 6) of the New York State Constitution, because the New York prosecution requires proof of elements that the Connecticut prosecution did not. (People’s mem at 6.) Moreover, the People argue, this prosecution does not violate CPL 40.20 (2) because the facts of the case fall under paragraph (a) of the exceptions to section 40.20 (2) — the offenses have substantially different elements and the acts establishing the offenses are not substantially similar. (People’s mem at 6.)
*356 A. SORA is a Regulatory Statute
SORA’s system of registration and notification was intended to protect communities by notifying them of the presence of individuals who may present a danger and enhancing the ability of law enforcement authorities to fight sex crimes. Matter of M.G. v Travis, 236 AD2d 163 [1st Dept 1997].) The act’s preamble contains the following statement of the Legislature’s finding and intent.
“The legislature finds that the danger of recidivism posed by sex offenders, especially those sexually violent offenders who commit predatory acts characterized by repetitive and compulsive behavior, [sic] and that the protection of the public from these offenders is of paramount concern or interest to government. The legislature further finds that law enforcement agencies’ efforts to protect their communities, conduct investigations and quickly apprehend sex offenders are impaired by the lack of information about sex offenders who live within their jurisdiction and that the lack of information shared with the public may result in the failure of the criminal justice system to identify, investigate, apprehend and prosecute sex offenders.
“The system of registering sex offenders is a proper exercise of the state’s police power regulating present and ongoing conduct. Registration will provide law enforcement with additional information critical to preventing sexual victimization and to resolving incidents involving sexual abuse and exploitation promptly. It will allow them to alert the public when necessary for the continued protection of the community. . . .
“[T]he legislature finds that releasing information about sex offenders to law enforcement agencies and, under certain circumstances, providing access to limited information about certain sex offenders to the general public, will further the primary government interest of protecting vulnerable populations and in some instances the public, from potential harm.” (L 1995, ch 192, § l.)[4]
*357 The legislative history of SORA also evinces a clear intent to regulate. As Assemblyman Daniel L. Feldman, the law’s sponsor in the Assembly, explained:
“Community notification promotes a state interest in advancing the protection of the public. Parole and other law enforcement departments in the states that sanction notification or access have found that it actually aids them in performing their duties. The public is notified so that they can be their ‘eyes and ears.’ ” (Letter from Daniel L. Feldman to Michael Finnegan, Counsel to the Governor, July 7, 1995, at 4, Bill Jacket, L 1995, ch 192, at 14.)
A memorandum issued by Assemblyman Feldman and SORA’s sponsor in the State Senate, Senator Dean G. Skelos, confirms the regulatory aims of the Act. (See Senate Introducer Mem in Support, at 2-3, Bill Jacket, L 1995, ch 192, at 6-7 [“Protecting the public, especially children, from sex offenders is a primary governmental interest .... The New York statutory plan provided under this bill is predominantly regulatory”].)
Morever, the context in which the act was adopted reinforces its valid regulatory purpose. New York’s “Megan’s Law” was passed on July 25, 1995, after the sexual assault and murder of Megan Kanka, the seven-year-old victim of a sexual assault and murder in New Jersey in 1994, prompted the enactment of sex offender registration and notification statutes in that state and several others. (See Bill Jacket, L 1995, ch 192, at 14.)
Proceeding from a legislative finding that convicted sex offenders exhibit heightened rates of recidivism and that sex offenders therefore present a special danger to the public and, in particular, to vulnerable women and children, SORA is primarily intended as a measure to foster public safety. (See Doe v Pataki, 120 F3d 1263, 1276-1279 [2d Cir 1997], cert denied 522 US 1122 [1998]; People v Stevens, 91 NY2d 270, 274-275 [1998].) Although New York’s SORA “advances some goals traditionally associated with the criminal law, it primarily ‘ serve [s] important nonpunitive goals’ of protecting the public from potential dangers and facilitating future law enforcement efforts.” (Doe v Pataki, 120 F3d at 1283, quoting United States v Ursery, 518 US 267, 290, 292 [1996] [that a law is “tied to criminal activity . . . is insufficient to render (it) punitive”]; see also Kansas v *358 Hendricks, 521 US 346, 361 [1997] [imposition of restrictive measures on sex offenders adjudged to be dangerous is a legitimate nonpunitive governmental objective]; Smith v Doe, 538 US 84, 94 [2003] [“even if the objective of (Alaska’s SORA) is consistent with the purposes of the Alaska criminal justice system, the State’s pursuit of it in a regulatory scheme does not make the objective punitive”].)
B. This Prosecution Does Not Violate CPL 40.20 (2)
Where a case may properly be determined on other grounds, a court should refrain from considering challenges brought under the Federal or State Constitution. (Jean v Nelson, 472 US 846 [1985]; Matter of Syquia v Board of Educ. of Harpursville Cent. School Dist., 80 NY2d 531 [1992].) We therefore consider, as a threshold matter, New York’s statutory double jeopardy protection.
Under CPL 40.20 (2) a person may not be separately prosecuted for two offenses based upon the same act or criminal transaction unless:
“(a) The offenses as defined have substantially different elements and the acts establishing one offense are in the main clearly distinguishable from those establishing the other; or
“(b) Each of the offenses as defined contains an element which is not an element of the other, and the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil.”
As the Court of Appeals has stated, “absent the statutory exceptions, no matter the number of statutory offenses technically violated, or the number of jurisdictions involved, an accused is not to suffer repeated prosecution for the same general conduct.” (People v Abbamonte, 43 NY2d 74, 81-82 [1977].)
Unlike the constitutional Blockburger rule, discussed in detail infra, which is primarily a legal test based upon a comparison of the elements of the two offenses, whether two offenses arise out of the same act or criminal transaction is primarily a factual question. (See Matter of Abraham v Justices of N.Y. Supreme Ct. of Bronx County, 37 NY2d 560 [1975] [the Legislature, “apparently dissatisfied with the Federal formulation, adopted in (CPL 40.20 [2]) what is generally known as the ‘same transaction’ test . . . However, aware of the pitfalls in so broad a rule . . . , the Legislature . . . engrafted six exceptions upon it”].)
Our case falls squarely within the exceptions carved out in CPL 40.20 (2) (a) and (b). As examined more fully infra in our *359 constitutional analysis, the offenses charged herein have substantially different elements than the offense to which defendant pleaded guilty in Connecticut. More significant to determining whether the case is barred by New York’s “same transaction” statutory double jeopardy protection, the acts establishing the offenses alleged here are clearly distinguishable from those establishing the Connecticut offense. Significantly, the acts establishing the New York offenses are alleged to have occurred at a different time and place than the conduct to which defendant pleaded guilty in Connecticut. The conduct for which defendant has pleaded guilty to violating Connecticut General Statutes § 54-253 occurred on or about April 12, 2006, while the conduct for which defendant is currently charged in New York is alleged to have occurred on or about December 4, 2006 and December 4, 2007. Thus, the conduct for which defendant was charged, and for which he pleaded guilty in Connecticut, occurred in Connecticut, where defendant then resided, over seven months prior to any of the events in New York underlying this prosecution.
Defendant’s argument that there was a single purpose and objective underlying all of the offenses is unavailing. We could easily imagine a situation where a defendant, convicted of a sexual offense in New York requiring registration, moves out of state and registers in his new home, but not in New York, or notifies the New York authorities of his new residence while failing to register in the state to which he moved. Defendant’s self-serving claim, made without the benefit of a supporting affidavit from him, that his move was made for the purpose of evading the registration requirement, even if accepted as true for the purposes of argument, does not overcome the fact that his violations of the New York and Connecticut statutes occurred at separate times and places, and constitute distinct acts, and not the “same general conduct” (see People v Abbamonte, supra), any more than prosecution of a serial bank robber for holding up several banks would constitute double jeopardy, notwithstanding that the thief s serial bank robberies might be described as the same general conduct.
Defendant characterizes CPL article 40 as expanding double jeopardy protections beyond those provided by the constitutional double jeopardy rule. To the extent that CPL 40.20 (2) affords additional protection beyond that required under the Federal and State Constitutions, these statutory double jeopardy provisions are not violated here. (See Matter of Polito v Walsh, 8 NY3d 683 [2007].)
*360 C. Defendant’s Prosecution Does Not Violate the Double Jeopardy Clause
The Double Jeopardy Clause of the Fifth Amendment provides, “nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb” (US Const Fifth Amend). This federal constitutional protection is made applicable to the states by virtue of incorporation through the Fourteenth Amendment. (See Benton v Maryland, 395 US 784 [1969]; see also NY Const, art I, § 6.) The Double Jeopardy Clause prohibits both multiple prosecutions for the same offense (following either conviction or acquittal) and multiple punishments for the same offense. (United States v Dixon, 509 US 688 [1993]; People v Vasquez, 89 NY2d 521 [1997].) It is the former prong that is purportedly implicated here: defendant contends that, having been previously subject to prosecution in Connecticut for failure to register as a sex offender, he may not be prosecuted in New York for the same offense. (Defendant’s aff at 3.)[5]
The People argue, citing Blockburger v United States (284 US 299, 304 [1932]), that double jeopardy does not apply here. The applicable rule set out in Blockburger (at 304) is, “where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.” In United States v Dixon (supra), the Supreme Court has restated the Blockburger test, as follows:
“In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the ‘same-elements’ test, the double jeopardy bar applies . . .
The same-elements test, sometimes referred to as the ‘Blockburger’ test, inquires whether each offense contains an element not contained in the other; if not, they are the ‘same offence’ and double *361 jeopardy bars additional punishment and successive prosecution.” (509 US at 696.)
Having examined the elements of the relevant offenses, we have established that each requires proof of a fact that the other does not, and thus, the crimes are not the same offense, regardless of any overlap in their elements. (See Gavieres v United States, 220 US 338, 343 [1911].) The Connecticut statute, Connecticut General Statutes § 54-253, requires proof of facts that the New York statute does not, i.e., that defendant established a new residence in the State of Connecticut, and failed to register as a sex offender in that state for a period of time that would constitute undue delay. The New York statute, which defendant is currently charged with violating, also requires proof of facts that the Connecticut statute does not. Specifically, Correction Law § 168-f (2) requires proof of facts that defendant did register as a sex offender in New York, that he was notified of his registration obligations as a sex offender in New York, that nonforwardable annual verification forms were sent to defendant’s last known address, and that the forms were not returned to DCJS; and Correction Law § 168-f (4) requires proof that defendant did not notify DCJS of an address change within 10 days of such change. Since the offenses in question survive the “same-elements” test, the Double Jeopardy Clause is simply not implicated.
The United States Court of Appeals for the Second Circuit has held that while Blockburger is normally applied by examining the facts required to be proved for conviction under the statutes defining the offenses, in circumstances where one of the statutes covers a broad range of conduct, it is appropriate under Blockburger to examine the allegations of the indictment rather than only the terms of the statute. (United States v Liller, 999 F2d 61, 63 [2d Cir 1993].) As discussed at length supra, the conduct for which defendant is currently being charged occurred at a different time and place, in New York on December 4, 2006 and December 4, 2007, than the conduct for which he pleaded guilty in Connecticut, which took place in that state on or about April 12, 2006. In this case, whether we examine only the statutes or include the facts alleged in the indictments, defendant’s offenses are separate.
Moreover, the Connecticut and New York registration requirements serve different purposes. Defendant’s alleged failure to register does not have an effect only upon a particular individual (such as an assault victim), but rather on the community as *362 a whole, because the failure to register impedes notification to the community of sex offenders living in that community and impinges on the ability of law enforcement authorities to fight sex crimes. (See People v Olivera, 184 Misc 2d 327 [Crim Ct, Bronx County 2000]; People v Patterson, 185 Misc 2d 519 [Crim Ct, Bronx County 2000]; People v Marsh, 329 Ill App 3d 639, 648, 768 NE2d 108, 115 [2002] [“when a defendant fails to register and authorities therefore cannot monitor his movements and whereabouts, he is free to commit sexual offenses without possible detection”].)
Defendant was convicted in New York, and thus New York has a continuing interest in maintaining information on defendant’s whereabouts to protect the community, even if defendant is outside the jurisdiction. Connecticut has an interest in monitoring all sex offenders who are residing in that state, whether they were convicted in Connecticut or a different state.
Conclusion
Accordingly, defendant’s motion is denied in its entirety, except that his motion to reserve his rights to make further motions is granted to the extent provided for by CPL 255.20 (3).

. The court notes that while there has been extensive litigation addressing the question of whether sex offender registration acts themselves violate the prohibition against double jeopardy, as discussed infra, none have addressed the issue presented herein.

. People v Ross (169 Misc 2d 308 [Sup Ct, NY County 1996]), the first case interpreting New York’s “new” SORA, notes that every state has adopted sex offender registration statutes, and provides citations for those statutes.

. Recent amendments to SORA have changed the language, but not the substance, of the registration and notification requirements. (See Correction *355 Law § 168-f [2]-[4]; § 168-t.) Correction Law § 168-t has since been amended to provide that a first offense for failing to register is a class E felony and any subsequent offense is punishable as a class D felony. (See L 2007, ch 373.)

. The Legislature also noted that adoption of SORA will bring the State into compliance with the Federal Crime Control Act (42 USC § 14071), known *357 as the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program.

. The court observes that the parties here have not raised the issue of whether multiple punishments may be imposed for more than one violation of a single statute, which requires determination of the allowable unit of prosecution. (See Willette v Fischer, 508 F3d 117 [2d Cir 2007] [where defendant had been convicted four times of failing to change his address on a continuing violation theory, the court held that defendant’s conduct of moving from his father’s house constituted one violation of SORA’s change of address reporting requirement].)